UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe Delores GOMEZ,
Defendant-Appellant.

No. 78–1080.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 25, 1979.

Decided Aug. 3, 1979.

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M. (William W. Deaton, Jr., Federal Public Defender, Albuquerque, N. M., on the brief), for defendant-appellant.

Robert B. Collins, Asst. U. S. Atty., Albuquerque, N. M. (with Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

On the whole we in this country have set for ourselves an enviable model of caution and fairness in litigating accusations of criminal conduct. For the most part this case, involving charges that a convicted felon was in unlawful possession of two guns and had made false applications in connection with their acquisition,[1] was an outstanding example of that caution and fairness. The government's evidence was more than enough to meet its burden. The defendant testified in his own behalf, but his testimony centered on his lack of any recollection of the events in question as a result of excessive drinking.[2] On appeal, defendant raises five particulars in which he claims his trial did not conform to the model. Each of these particulars relates to a matter which is left almost entirely to the discretion of the trial judge, whose first-hand observation of the testimonial setting and whose judgment, even in the press of trial, usually is superior to that of an appellate tribunal after the fact.

As to one of the guns, the evidence about possession, purchase, and the preparation of a false application form was direct and convincing. As to the other, the government learned shortly before trial that its eyewitness gun seller would be unavailable. A handwriting expert was therefore called to testify concerning the relevant application form. The government did not make a timely disclosure of its intent to use the expert, and, pursuant to a defense request, the court struck the witness' testimony and instructed the jury in an attempt to minimize the effect of the testimony.[3] While it appears to us that the prosecutor's representation to the court about his failure timely to disclose his intended use of this witness was dangerously close to lacking in the candor required of counsel, the trial court expressly found no "devious purpose" on the government's part.[4] Record, vol. 2,

---

1. Such conduct was in violation of 18 U.S.C. § 922(a)(6) and (h)(1).

2. In addition, defendant denied that it was his signature that appeared on the check with which one of the guns was purchased.

3. The court's instruction occurred immediately following the witness' testimony and was explicit:

   And having determined subsequent to the witness's testimony that this evidence did come too late, and that it did not comply with the rules of the Court as to timeliness, so that is just not admissible evidence and it's stricken from your consideration. Do not consider it in any regard in deciding the case, please.

   Record, vol. 2, at 117. In his final instructions, the court reminded the jury that testimony "withdrawn from your consideration [does] not constitute evidence and must not be considered by you." Record, vol. 3, at 252–53.

4. This is not to say that the court found the government's conduct entirely acceptable:

   I will just tell you, the Government has been intentionally or accidentally but regularly playing very close to the line on Rule 16. And on the discovery agreed. . . . And it's been going on regularly. I have indicated before, and I am not going to put up with it,

at 115. If the discrepancy between the expert witness' and the prosecutor's versions of the underlying facts were any greater, we would not hesitate to reverse notwithstanding defendant's failure to request a mistrial at the time of the incident.[5] However, we do not believe that the trial court's decision against declaring a mistrial *sua sponte* constituted reversible error. His handling of this aspect of the case was within the bounds of caution and fairness.

■ Another way in which defendant claims his trial deviated from the perfect model concerns the refusal of the trial court to grant a delay to permit defendant an opportunity to utilize the services of retained counsel. The timing of the request and the able and vigorous representation by appointed counsel lead to the conclusion that the trial court's denial of the motion for a continuance was within the bounds of his discretion.

■ The third particular in which it is claimed the trial did not conform to the perfect model relates to the trial court's permitting the prosecutor, deprived of his handwriting expert, to use the defendant's probation officer to identify the defendant's signature on the application form. In general, we do not approve of the use of other lay persons to tell jurors what they can judge for themselves, as the jurors in this case could have done by comparing the contested signature with the known signatures of defendant that had been received into evidence. However, we do not in every circumstance disapprove of laymen identifying the signature of persons whose handwriting they are familiar with. *See, e. g., United States v. Kilgore*, 518 F.2d 496, 498 (5th Cir. 1975); *Ryan v. United States*, 384 F.2d 379 (1st Cir. 1967); *Schaefer v. United States*, 265 F.2d 750, 754 (8th Cir.), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959).[6] We do not think the trial court's ruling in this matter exceeded the bounds of good judgment, although his judgment certainly was lenient on behalf of the prosecutor whose delinquence, after all, had made this testimony necessary.

■ The fourth matter complained of concerns the propriety of certain rebuttal testimony. The defendant testified that due to the effects of alcohol he had no memory of the gun purchases. On rebuttal, the trial court permitted one of the gun sellers to testify concerning a third transaction in which the defendant filled out an application with a false denial of prior felony convictions. This transaction occurred about an hour after one of the transactions charged in the indictment. The gun seller's narrative strongly suggested a different version of the defendant's state of mind. The difficulty with this testimony was that it placed before the jury evidence of an uncharged crime. The continuing and difficult task of trial courts in instances where evidence is proffered of crimes other than those at issue is to exercise true judgment in balancing the probative value of the evidence against the high likelihood of its prejudicial impact on jurors. We will continue to supervise trial courts to insure that they exercise true judgment and not prosecutorial bias in these matters. We are satisfied that, in the circumstances of this case, the court exercised sound judgment in permitting this testimony. He also properly instructed the jury concerning its limited significance.[7]

---

and I am not going to in this case. And I'm not going to, in future cases.

I am going to tell the jury exactly why I am striking the evidence here. Now you had better just spread the word down in that office that [non-disclosure] will not be tolerated if you agree to provide the names of an expert witness  .   .   .   .
Record, vol. 2, at 115.

5. The trial court expressed a similar sentiment, notwithstanding the lack of a formal mistrial motion:

I said I didn't think there was [any devious intent]. If I thought there was, I would grant a mistrial in one second. I wouldn't hesitate. Record, vol. 2, at 116.

6. Although it ought not be too readily used or too broadly construed, Rule 701 of the Federal Rules of Evidence would seem to permit the admission of the testimony in question as appropriate opinion testimony by a lay witness.

7. The court instructed:
There has been evidence tendered in this case concerning an attempted purchase of

The final particular complained of does not in any respect depart from the model. The defendant claims he had been previously prosecuted in state court for negligent use of one of these firearms.[8] Whatever may be said of the legislative judgment to dissect various activities into multiple crimes, the authority to do so is not challenged in this case. Insofar as defendant is contending that deviation from the Justice Department's "Petite Policy" requires reversal, the law in this Circuit simply forecloses that argument. *United States v. Thompson*, 579 F.2d 1184 (10th Cir.) (en banc), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *United States v. Fritz*, 580 F.2d 370 (10th Cir.) (en banc), *cert. denied*, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

We affirm.

another firearm by the Defendant under circumstances similar to those alleged to be involved in the charges here. Such evidence may not be considered by you in determining whether the Defendant committed the acts charged in the Indictment. However, if you find beyond a reasonable doubt from other evidence in the case that the Defendant did the acts charged in the Indictment, then you may consider the tendered evidence as to an alleged act of a similar nature and if you find it to be probative on the issues of knowledge or absence of mistake or accident, you may give that evidence such weight, if any, as you think it deserves in determining those issues.

Record, vol. 3, at 248–49.

8. The only apparent reference to this matter in the record is a comment made by defendant's parole officer:

I became aware through the police blotter, the office receives a copy of the police blotter of any arrests in Bernalillo County. It came to my attention on that blotter that Mr. Gomez was arrested and charged with negligent use of a firearm.

Record, vol. 2, at 82.