UNITED STATES Appellee,

v.

Mark L. CALLARA, Lance Corporal,
U.S. Marine Corps, Appellant.

Nos. 50008/MC,
NMCM 83–4919.

U.S. Court of Military Appeals.

Feb. 3, 1986.

For appellant: *Lieutenant J. Cunyon Gordon*, JAGC, USN (argued); *Commander David C. Larson*, JAGC, USN and *Lieutenant Mark A. Zuboff*, JAGC, USNR (on brief).

For appellee: *Commander Michael P. Green*, JAGC, USN (argued); *Captain W. J. Hughes*, JAGC, USN (on brief); *Lieutenant William V. Cerbone, Jr.*, JAGC, USNR and *Lieutenant J. K. Ianno*, JAGC, USNR.

## Opinion of the Court

EVERETT, Chief Judge:

Lance Corporal Mark L. Callara was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was found guilty of wrongful possession of a combat knife and intentional infliction of grievous bodily harm, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928, respectively.[1] His sentence included a dishonorable discharge, confinement and forfeiture of $382.00 pay per month for 2 years and reduction to pay grade E-1. The convening authority approved the findings and sentence, and the Court of Military Review affirmed. We granted review to determine this issue:

WHETHER PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE DENIED DEFENSE'S MILITARY RULES OF EVIDENCE 304(d)(1) MOTION TO SUPPRESS APPELLANT'S ORAL STATEMENT MADE TO AN N.I.S. AGENT BUT NOT DISCLOSED TO THE DEFENSE UNTIL APPELLANT HAD TESTIFIED IN A MANNER INCONSISTENT WITH THE ORAL STATEMENT AND THE DEFENSE HAD RESTED.

**1.** Originally, he had been charged with assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, but the members found him guilty

## I

Appellant and a group of Marines were involved in a fight which terminated with appellant stabbing Corporal John Stout several times with a knife. During appellant's direct examination, he claimed that the stabbing was done in self-defense. Callara testified that Stout "sucker punched" him in the mouth and that he "went down" with his right arm hitting the ground. By the time he "got up," Stout "was through with Manbeck and he came right after me." At that time, appellant "pulled" his knife and told Stout to "[b]ack off." However, Stout eventually "charged" him and got the best of him, hitting him in the face, shoulder, and side. Appellant then stabbed Stout because he could not "get away from him."

In answer to the defense counsel's question as to "what damage was done to you by the blow to your mouth and to your arm when you hit the deck?", Callara stated that "my arm got scraped up pretty bad and my mouth and my lip got scraped up a lot, and I had something like a brush burn on my chin." Then, the defense counsel asked Callara whether these injuries had been photographed. Callara replied that they had been photographed the morning after the fight, and he identified photographs as "accurately" showing the damage to his right arm, chin, and mouth.

During Callara's cross-examination, trial counsel inquired whether it was his "sworn testimony" that "[t]hese wounds" he had shown the court were "caused" by Stout. Appellant answered in the affirmative. Trial counsel's next question was, "You are not lying, are you?"; and Callara gave a negative reply.

After the defense rested, trial counsel announced that he had rebuttal witnesses; and the judge granted a brief recess for the defense counsel to interview one of these witnesses. When court resumed, the

of the lesser-included offense of assault intentionally inflicting grievous bodily harm. Also, the court members acquitted him of carrying a concealed weapon, in violation of Article 134.

defense moved to suppress the testimony of Special Agent Hank Bell of the Naval Investigative Service (N.I.S.) because of asserted noncompliance by the Government with Mil.R.Evid. 304(d)(1), "concerning disclosure prior to arraignment of all statements written or oral known to the Government that are relevant to the case within control of the armed forces."

Defense counsel emphasized that

[t]he defense just learned of this evidence interviewing the rebuttal witness Special Agent Bell. He is the NIS Agent who made the investigative report, nowhere in his report—which was completely disclosed to the defense prior to arraignment—was any mention of such conversation made.

The purpose for my stating that last bit of offer of proof, judge, is the objection, of course, normally would be made prior to pleas, to suppress any sort of statement. I'm just demonstrating the unusual circumstance which requires us to raise it to this 39(a) session well after pleas and requests the military judge consider it in the interest of justice.

Questioned by the military judge about Bell's expected testimony, the prosecution responded:

[O]n the 16th of March of 1983, after apprehending Callara and after subsequent advisement of rights and he exercised his right to and remained silent. Agent Bell proceeded to take the accused, put him in the vehicle in order to drive him over to the navy hospital to take pictures of the wounds that were visible on the face of Lance Corporal Callara. That wound being Defense Exhibit C. While they were enroute or driving enroute to the hospital, Lance Corporal Callara asked Agent Bell where they were going. Agent Bell responded, "I'm taking you over to the hospital so that we can take pictures of the wounds on your face"; at which time the accused responded, "Oh, I got these wounds a couple of days ago in a football game."

The military judge then ascertained that the conversation between Agent Bell and Callara had not been "reduced ... to writing in any naval investigative report," but that the defense was "on notice from the outset of this case that Agent Bell was the controlling agent with regard to investigation of this case." Trial counsel also remarked that "[t]he Government provided a complete copy of everything that it had with the NIS report, including the name of the NIS agent."

The defense acknowledged receipt of "an almost complete file" but emphasized that, although interviewed extensively, Special Agent Bell had failed to "volunteer the fact that he had a conversation with the accused." Moreover, trial counsel did not "volunteer to the defense that there [were] any confessions or admissions by the accused."

In denying the motion to suppress, the judge explained:

Well, it appears to me that when we talk about a confession or admission under Rule 304, an admission is defined in the rule as [a] self-incriminating statement falling short of acknowledgment of guilt, even if it was intended to be by its maker exculpatory. Up until the time the accused has indicated by his testimony in this court-martial that those injuries were a result of blows from Stout. I don't believe that this statement by him constitutes a confession or necessarily a self-incriminating statement, and I don't believe that it is absolutely required that the government must provide to the defense or inform the defense of every single solitary statement that an individual makes when these individuals, the investigators are speaking to them. The defense is at liberty to inquire of a witness or potential witness, naval investigative service officer in this case in matters that they have not disclosed in their reports that the accused may have brought forth to them; and you're certainly at liberty to inquire on cross-examination as to the nature of this statement.

Thereafter, Special Agent Bell testified that appellant had told him about receiving the facial wounds in a football game. Later, in instructing the court members, the

military judge treated Bell's testimony in this manner:

You heard during the trial, gentlemen, evidence of a prior inconsistent statement of the accused; that being the accused's testimony that defense exhibits which noted facial injuries to the accused, photographs was sustained in his combat with Lance Corporal Stout. You heard the testimony of Mr. Bell that indicated that the accused informed him that those injuries were a result of his previous engagement in a football game. If you believe that an inconsistent statement was made you may consider the inconsistency in evaluating the testimony of the accused. You may not, however, consider the prior statement as evidence of truth of the matters contained in that prior statement.

Before the United States Navy-Marine Corps Court of Military Review, appellant again contested admissibility of Agent Bell's testimony. The court disagreed with the military judge's narrow interpretation of Mil.R.Evid. 304 and stated that "[i]t was the intent of the drafters that the rule apply to all statements of the accused in the possession of the Government which are relevant to any part of the case, including matters in rebuttal and sentencing." Unpublished opinion at 2. Nonetheless, the court ruled that "denial of the motion to suppress was correct" because:

Suppression was clearly not warranted here in light of the lack of any challenge to the reliability of appellant's statement and the absence of evidence that the Government purposely failed to disclose the statement in order to attain an unfair advantage over appellant.

*Id.* at 3.

## II

### A

Mil.R.Evid. 304(d)(1) provides that
[p]rior to arraignment, the prosecution shall disclose to the defense the contents of all statements, oral or written, made by the accused that are relevant to the case, known to the trial counsel, and within the control of the armed forces.

This unambiguous language includes remarks made during informal conversations—like that which took place between appellant and Bell. Whether the oral remark is subsequently transcribed in a written report is unimportant. Moreover, there is no exception for statements which the prosecutor plans to use only in rebuttal. As stated in the Drafters' Analysis of this Rule, "The prosecution is required to disclose prior to arraignment all statements by the accused known to the prosecution which are relevant to the case (*including matters likely to be relevant in rebuttal* and sentencing) and within military control." Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition) (emphasis added.)

Prosecutors might prefer a different interpretation because an accused may greatly injure his defense if he testifies while unaware of a damaging pretrial admission that the Government can use in rebuttal. However, to require disclosure of such rebuttal evidence favors sound administration of criminal justice. If the disclosure is made prior to arraignment, then the defense must move to suppress prior to submission of a plea or else it will have waived objections to the statement's admissibility. Mil.R.Evid. 304(d)(2)(A). Thus, the trial will not be delayed to consider admissibility of the statement when it is offered in evidence. Contrariwise, if there has been no pre-arraignment disclosure of the accused's statement, then trial must be interrupted for consideration of defense objections to admissibility of the statement. Furthermore, disclosure of an accused's admissions prior to arraignment may induce a guilty plea and avoid a contested trial.[2]

---

**2.** Some defense counsel would probably add that another advantage of requiring early disclosure of an accused's pretrial statements is the elimination of a possible temptation for law enforcement agents to fabricate a damaging admission after the accused has testified.

■ The disclosure requirement applies only to "relevant" statements; and the relevance of some pretrial statements made by the accused may not be foreseen until the defense has presented its case. Under those circumstances, the Government cannot be penalized for earlier nondisclosure. On the other hand, if there is a reasonable prospect that the statement might be offered in evidence during the trial, then disclosure is required.

■ In defining the term "admission," Mil.R.Evid. 304(c)(2) makes clear that an accused's statement can be "self-incriminating," and therefore relevant, "even if it was intended ... to be exculpatory." Consequently, the duty to disclose a pretrial statement is independent of any recognition by the accused that the statement was relevant at the time it was made. The evaluation is made solely in terms of what evidence might tend to prove guilt in light of the trial scenarios reasonably to be anticipated.

■ In an assault case it would seem likely that an accused's statement about recent wounds will be relevant—either to establish or to exclude a claim of self-defense. Certainly in this case we perceive the requisite relevance.[3] Therefore, because the statement had been "known to the trial counsel" for several weeks "and [was] within the control of the armed forces," it should have been disclosed.

## B

The sanction for nondisclosure is the concern of Mil.R.Evid. 304(d)(2)(B), which provides:

> If the prosecution intends to offer against the accused a statement made by the accused that was not disclosed prior to arraignment, the prosecution shall provide timely notice to the military judge and to counsel for the accused. The defense may enter an objection at that time and the military judge may

make such orders as are required in the interests of justice.

Significantly, the Rule does not specifically prescribe suppression of an individual statement by an accused. Instead, it grants authority to the military judge to "make such orders as are required in the interests of justice"—orders which may include but certainly are not limited to suppression of the pretrial statement as evidence.

■ In refusing suppression, the judge clearly did not abuse his discretion here. The defense had been given an opportunity to interview Special Agent Bell. Apart from the nondisclosure prior to arraignment, the only defense objection to Bell's testimony concerned a possible reference by the witness to Callara's exercise of his constitutional right to silence. Perhaps appellant would not have testified—or testified as he did—if the statement had been disclosed prior to arraignment. However, in our view this circumstance does not require suppression. Indeed, neither Callara nor his counsel ever made such a claim at trial.

Appellant also claimed that his statement should have been suppressed because the Government had deliberately withheld the statement in order to "ambush" him with it. However, we agree with the court below that there was no evidence that trial counsel failed to disclose the statement in order to attain an unfair advantage over appellant. Indeed, even if the evidence had shown that trial counsel willfully violated Mil.R.Evid. 304(d)(1) in not disclosing the statement prior to appellant's arraignment, we conclude that the judge was still free to determine that it would be "in the interests of justice" to admit the statement when the statement demonstrated that appellant had lied as a witness. Obviously, the disclosure rules were never designed to give comfort to an unscrupulous witness who plans to falsify his testimony.

---

**3.** Apparently the drafters of Mil.R.Evid. 304(d)(1) intended that the relevance requirement be given an interpretation parallel to that which has been accorded a similar requirement in Fed.R.Crim.P. 16(a)(1)(A).

## III

After the defense has presented its case, the prosecution may call or recall witnesses in rebuttal. *See* 1969 Manual, *supra*, App. 8b, A8–22; R.C.M. 913(c)(1)(C), Manual for Courts-Martial, United States, 1984. Rebuttal evidence is "[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the adverse party." *Black's Law Dictionary* 1139 (5th ed. 1979). Clearly, this was the prosecution's purpose for offering appellant's pretrial statement to Agent Bell.

■ The military judge's instruction tended to obscure this purpose, for he advised the court members in terms "of a prior inconsistent statement of the accused" which could be considered "in evaluating the testimony of the accused"; and he instructed that they could "not . . . consider the prior statement as evidence of truth of the matters contained" therein. Actually, this statement was admissible not only as a prior inconsistent statement of a witness—namely, the accused—but also because it constituted an admission of a party—opponent concerning a relevant fact. *See* Mil.R.Evid. 801(d)(2)(A). Thus, it was admissible without restriction and could be considered as substantive evidence.[1]

## IV

Appellate defense counsel have complained that trial counsel "ambushed" appellant with his undisclosed pretrial statement to Bell. At the least, they contend, Callara should have been asked about this statement while on the stand, so that he could deny or explain it. We conclude, however, that the Military Rules of Evidence call for a different result.

Mil.R.Evid. 613 provides:

(a) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel. (b) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. *This provision does not apply to admissions of a party-opponent* as defined in rule 801(d)(2).

(Emphasis added.)

It is clear from Mil.R.Evid. 613(a) that, even if trial counsel had cross-examined Callara about his pretrial statement when he was testifying on the merits, it would have been unnecessary to show the contradictory statement to appellant or to disclose its contents to him at that time. Indeed, the statement need not be shown or disclosed by the cross-examiner unless the opposing counsel makes a specific request. As Professor Saltzburg explains in his analysis of Mil.R.Evid. 613(a):

This Rule changes military practice. Prior military practice in this area was governed by Manual paragraph 153*b*(2)(c) which followed the common law. It specified that if a witness was to be impeached with a prior inconsistent statement, first a foundation had to be established. To accomplish this, counsel had to direct the witness's attention to the time and place of the statement, and the person or persons to whom it was made and then ask the witness if he made the statement. This provision applied whether the prior statement was oral or written. Like the common law, the military's prior rule operated to protect the witness from unfair surprise by informing him of his past statement. Some supporters of the Rule believed that when the witness

---

**4.** Under the circumstances of this case it probably was almost impossible for the court members to grasp the subtlety of a distinction between using the prior statement to impeach appellant's account of receiving his injuries and using this statement for substantive evidence as to the source of those injuries.

was faced with his alleged prior statement, he was more likely to be truthful about it.

But many critics believed that the Rule had the opposite effect and that the process of establishing a foundation prior to using inconsistent statements allowed the dishonest witness to reshape his testimony, anticipate questions, and thus frustrate counsel by preventing his cross-examination from being an effective truth-developing mechanism.

Although the literature indicates that federal judges often failed to honor the common law foundational requirements, their military counterparts scrupulously enforced them. The new Rule abandons them, and provides that when counsel is examining a witness based on an inconsistent oral or written pretrial statement, that statement need not be shown to the witness, nor must its contents be disclosed to the witness during cross-examination. However, if opposing counsel requests the statement, it must be shown or disclosed to him ....

*Even more important is the fact that the prior inconsistent statement need not be offered or mentioned during cross-examination, but may be withheld until other witnesses are called.* This may be particularly useful if counsel is attempting to demonstrate collusion among witnesses. *Thus the statement may be offered to impeach a witness after the witness has left the stand. The Rule provides that the witness must be afforded an opportunity to explain or deny an inconsistent statement, but does not require that the opportunity be afforded before the statement is offered. A subsequent opportunity is acceptable.* See. *e.g., United States v. King*, 560 F.2d 122 (2d Cir.1977), cert. denied, 434 U.S. 925 [98 S.Ct. 404, 54 L.Ed.2d 283] (1978 [1977])

S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 311–

12 (1981) (emphasis added). *Accord* Drafters' Analysis of Mil.R.Evid. 613(a), App. 18, 1969 Manual, *supra.*

With respect to extrinsic evidence of a witness' prior inconsistent statement, Mil. R.Evid. 613(b) requires that the witness be "afforded an opportunity to explain or deny the same and the opposite party ... [be] afforded an opportunity to interrogate the witness thereon." However, as the Drafters' Analysis of the Rule observes, "The Rule does not specify any particular timing for the opportunity for the witness to explain or deny the statement nor does it specify any particular method." App. 18, 1969 Manual, *supra.*[5] Thus, like Mil.R.Evid. 613(a), the opportunity to explain or deny may come *after* the alleged inconsistency has been revealed through a third party because the maker of the statement is not entitled to "be confronted with the 'statement' immediately." *United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir. 1979), cert. denied, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980). Indeed, as long as he has the opportunity to explain or deny it at some point, the requirement of the Rule is satisfied. *Wilmington Trust Co. v. Manufacturers Life Ins. Co.*, 749 F.2d 694, 699 (11th Cir.1985) (the witness could have challenged the alleged statement during his surrebuttal); *United States v. McGuire*, 744 F.2d 1197, 1203 (6th Cir.1984), cert. denied, — U.S. ——, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985).

Mil.R.Evid. 613(b) contains an express exception for "admissions of a party-opponent as defined in rule 801(d)(2)." Therefore, "admissions" are not subject to the Mil.R.Evid. 613(b) requirement of an "opportunity to explain or deny" the statement and be interrogated thereon by the opposing party. However, if the "admission" is in the category of "statements" covered by Mil.R.Evid. 304(d)(1)—"relevant to the case, known to the trial counsel, and within the control of the armed forces"—it should

---

**5.** If a judge learns in advance of the intent of a party to offer extrinsic evidence of a statement subject to Mil.R.Evid. 613(b), he has authority under Mil.R.Evid. 611(a) to require the party to prove the statement immediately after the witness has testified. A judge might well impose such a requirement in order to minimize inconvenience to the witness.

have been disclosed to the defense prior to arraignment.

■ If there has been a failure to comply with that obligation, then, at the very least, the judge—in the exercise of his power under Mil.R.Evid. 304(d)(2)(B) to "make such orders as are required in the interests of justice"—should allow the accused to explain or deny the statement that was not disclosed before he testified. Also, the defense counsel should be allowed to interrogate him about the statement. Here the military judge did not offer any such opportunity to appellant and his counsel, as would have been appropriate. However, in the absence of any request by the defense to be granted this opportunity, we discern no prejudicial error.

## V

Although prior to arraignment trial counsel should have disclosed to the defense appellant's pretrial statement to Special Agent Bell, this error was not prejudicial.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.