UNITED STATES, Appellee,

v.

Larry E. HUGHES, Technical Sergeant,
U.S. Air Force, Appellant.

No. 60,119.
ACM S27655.

U.S. Court of Military Appeals.

Aug. 29, 1989.

**392**

For Appellant: *Captain Laurence M. Soybel* (argued); *Colonel Richard F. O'Hair* (on briefs); *Colonel Leo L. Sergi.*

For Appellee: *Captain Joseph V. Treanor, III* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief); *Captain Marc Van Nuys.*

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to appellant's pleas, a special court-martial convicted him of wrongful solicitation to distribute marijuana sometime between May 30 and November 16, 1986; additionally, despite his pleas, the court convicted appellant of wrongful use of marijuana on May 28, 1986. Therefor, the judge sentenced appellant to a bad-conduct discharge, confinement for 50 days, forfeiture of $500.00 pay per month for 6 months, and reduction to airman first-class. The convening authority approved these results, and the Court of Military Review affirmed without analysis but with citation to *United States v. Hines*, 23 MJ 125 (CMA 1986), and *United States v. Bridges*, 24 MJ 915 (AFCMR 1987).

This Court granted review of two issues growing out of the prosecution's use of pretrial statements made by appellant's wife.[1] The Government used the statements to corroborate appellant's confession after his wife had refused to testify at the court-martial, claiming the spousal-incapacity privilege pursuant to Mil.R.Evid. 504(a), Manual for Courts–Martial, United States, 1984. We hold against Hughes as to each issue, for we conclude that the prosecution violated no evidentiary privilege and no right of confrontation by using the pretrial statements under these circumstances.

During oral argument of this appeal, we specified an issue questioning whether the record contained legally sufficient evidence that the substance appellant smoked on May 28, 1986, was marijuana.[2] Again, though, we rule against appellant.

I

The issues in this Court involve only the conviction for use of marijuana, to which appellant pleaded not guilty. The challenged conviction was based on (a) appellant's own confession, in which he had admitted that he had taken "two hits" of marijuana at his wife's birthday party on May 28, 1986, and (b) the prior oral and written corroborating statements of appellant's wife to an OSI agent. These statements were admitted into evidence by the military judge over an unrelated defense objection after his wife had claimed her privilege.[3]

1. WHETHER THE INTRODUCTION OF A PRETRIAL STATEMENT MADE BY APPELLANT'S WIFE WHICH CORROBORATED HIS CONFESSION VIOLATED THE SPOUSAL PRIVILEGE BECAUSE IT WAS ACCEPTED INTO EVIDENCE AFTER SHE REFUSED TO TESTIFY AGAINST HER HUSBAND PURSUANT TO MIL. R.EVID. 504(a).

II
WHETHER APPELLANT WAS DENIED HIS RIGHT TO CONFRONT THE WITNESS AGAINST HIM WHEN THE COURT ADMITTED OVER DEFENSE OBJECTION HIS WIFE'S PRIOR STATEMENT IN ORDER TO CORROBORATE HIS CONFESSION.

2. WHETHER CORROBORATION BY APPELLANT'S WIFE OF HIS CONFESSION TO SMOKING MARIJUANA WAS SUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION.

3. Defense counsel had objected to admission of the written statement on grounds of hearsay and confrontation but not on the basis of the spousal privilege. He did not object at all to recitation of Mrs. Hughes' verbal statements.

The circumstances surrounding the making of those statements came to light during the testimony of OSI Agent Banks, who testified after Mrs. Hughes had claimed her privilege not to do so. Banks testified that he had interviewed her; that at the outset of the interview he had advised her that she did not have to make any statement; that she had, nonetheless, proceeded with the interview; and that her written statement then offered into evidence had been the product of that interview. This statement indicated that she had seen appellant use marijuana at her birthday party and that she "threw a fit"—and that she was aware of only that one instance in which her husband had used marijuana.

## II

■ Mil.R.Evid. 504 recognizes the "Husband-wife privilege." Section (a), "*Spousal incapacity*," succinctly provides: "A person has a privilege to refuse to testify against his or her spouse." This language quite clearly makes two points—both of which are recognized in the Drafters' Analysis of the rule:[4] First, the privilege belongs to the witness-spouse, not the accused-spouse; second, the privilege addresses the capacity of the testifying spouse to testify in court at all, rather than the content of that testimony.

■ In both respects, this rule is distinguishable from section (b) of the rule, "*Confidential communication made during marriage.*" Subsection (1) defines this privilege as follows: "A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." In contrast to the incapacity rule of section (a), this privilege is, at once, more expansive and more narrow: It belongs to either spouse, not just to the testifying spouse; but it protects only confidential marital communication between the spouses, not

in-court testimony about matters other than communications.

Of course, the confidential-marital-communication privilege is not at issue in this appeal; at no time did anyone ask Mrs. Hughes to reveal any such communication in her testimony. Thus, our focus is on Mil.R.Evid. 504(a) and its terse statement of spousal incapacity.

■ At common law, this "privilege" actually was a full disqualification—a spouse simply was not a qualified witness at all. Then, over time, the disqualification evolved into a legal theory of privilege, but still the privilege belonged to either spouse. *See Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958).

The Supreme Court, however, in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), rejected *Hawkins* and held that the spousal incapacity privilege could be asserted only by the witness-spouse, not the defendant-spouse. Indeed, as the Drafters' Analysis of Mil.R.Evid. 504(a), Manual, *supra* at A22–36 (Ch. 2), makes clear, our spousal-incapacity privilege—which, as noted earlier, is limited to the witness-spouse—is based on the *Trammel* holding.

Furthermore—and of particular relevance to this case—the *Trammel* Court indicated, in dictum, that the privilege applied only to in-court testimony and not to use of an out-of-court statement that had been made by the spouse:

> Neither *Hawkins*, nor any other privilege, prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited.

445 U.S. at 52 n. 12, 100 S.Ct. at 913 n. 12. In light of the drafters' clear indication that *Trammel* formed the basis of Mil.R.Evid. 504(a), the High Court's view of the application of that privilege to a spouse's out-of-court statement is especially per-

---

**4.** *See* Manual for Courts-Martial, United States, 1984, at A22–36 (Ch. 2).

suasive in our ultimate interpretation of that rule.

Several Federal courts have had occasion to address and interpret this language quoted from *Trammel* and have ruled that neither an accused nor his spouse may exclude, under spousal privilege, an out-of-court statement by the spouse when it is offered through a third party in court.[5] Typical is *United States v. Archer,* 733 F.2d 354 (5th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984).

There, the court declined to follow precedent of that circuit that the spousal-testimony privilege, which prior to *Trammel* could have been claimed by either spouse, extended to out-of-court statements as well as in-court testimony. Its new direction, the court believed, was mandated by the ruling in *Trammel:*

> [T]he Supreme Court's decision in *Trammel* to vest the adverse spousal testimony privilege in the witness-spouse suggests that the spouse's out-of-court statements are not within the privilege: "Neither *Hawkins,* nor any other privilege, prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony *in the courtroom* that is prohibited." *Trammel,* 445 U.S. at 52 n. 12, 100 S.Ct. at 913 n. 12 (emphasis added).
>
> *Trammel* denies the defendant the right to exclude the testimony of his spouse offered against him at trial; so must it deny him the right to exclude the spouse's out-of-court statements when offered in evidence by a writing or through testimony of a third party. The witness-spouse enjoys the right to refuse to testify at trial, of course, but it would strain both the logic of *Trammel* and the basis of the privilege to allow the witness-spouse who refuses to testify under *Trammel* or who testifies for the defendant to demand the

exclusion of previous statements made out of court.

733 F.2d at 358–59. The court discussed the logic of *Trammel* and the basis of the privilege, in contrast with the privilege against revealing confidential marital communications, as follows:

> An out-of-court spousal statement is already made by the time of trial. Marital harmony would be enhanced minimally if at all, therefore, by excluding the statement when offered after the fact through a third-party witness at trial, and "the normally predominant principle of utilizing all rational means for ascertaining truth" would be unnecessarily frustrated....
>
> Finally, like the *Trammel* Court, we distinguish communications from one spouse to another made in confidence. Such statements are protected, regardless of the means by which they are offered into evidence, by the separate privilege accorded confidential marital communications. *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *cf. [United States v.] Mendoza,* 574 F.2d [1373,] at 1379–31 [ (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978) ] ... The privilege protecting marital confidences turns on circumstances surrounding the communication when it was made—it must have been uttered in private between husband and wife. Regardless of how offered, such communications ordinarily cannot be admitted in evidence. In contrast, the *Trammel* rule turns on circumstances at trial and is justified by our hope that marital harmony will be furthered if persons are protected from having to testify unwillingly against their spouse. The spectacle at trial is *Trammel's* focus, not the subject on which the witness-spouse might testify, and we conclude that introduction of a spouse's out-of-court statements that do not qualify as marital confidences will not work sub-

---

5. *See, e.g., United States v. Archer,* 733 F.2d 354, 359 (5th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984); *United States v. Lefkowitz,* 618 F.2d 1313, 1318 (9th Cir.), *cert.* denied, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *United States v. Tsinnijinnie,* 601 F.2d 1035, 1037–39 (9th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980).

stantially more harm to the marriage than was wrought when the statement was made.

We therefore conclude that neither a defendant nor his spouse may exclude under *Trammel* an out-of-court statement by the spouse when offered against the defendant by a writing or through a third-party witness.

733 F.2d at 359 (footnote omitted).

■ In short, then, as the *Archer* court concluded, once the Supreme Court had ruled in *Trammel* that the spousal-testimony privilege belongs only to the testifying spouse and that the defendant-spouse may not invoke it, the conclusion logically follows that neither can the defendant object to the spouse's out-of-court testimony. Moreover, again as the *Archer* court reasoned, the whole rationale underlying the witness-spouse's privilege in court is absent when the statement was made out of court: The out-of-court statement already has been made, so whatever harm to the marriage that might flow from such a statement already has occurred. While the marital-communications privilege is based on the policy of fostering marital confidences and focuses, therefore, on the timing of the communication (that is, it must be made within the marriage relationship), the spousal-testimony privilege focuses on the courtroom and on the impact on the marriage from what happens there.

Accordingly, we hold that appellant had no privilege to invoke to prevent admission into evidence of his wife's out-of-court written and oral statements concerning his use of marijuana at her birthday party.

### III

Alternatively, appellant assails admission of his wife's out-of-court statements against him as a denial of his right to confront her. *See* U.S. Const. amend. VI. For several reasons, though, his attack fails.

■ First, appellant's claims under the circumstances of this case amount to mere gamesmanship and an effort to use the confrontation shield as a sword. *See United States v. Hines,* 23 MJ 125 (CMA 1986). As in *Hines,* the "unavailable" witness was at all times available to appellant for examination as to her out-of-court statements. Her declination to testify was out of a desire to protect the integrity of her marriage, but it could scarcely have threatened the marriage for appellant himself to call his wife as a witness to explain, if she could, her earlier statements. We did not permit such gamesmanship in *Hines,* and we will not do so here.

■ Second, the challenged statements bear adequate indicia of reliability which, when coupled with the unavailability of the witness to the prosecution, satisfy the confrontation requirement. *See Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Dill,* 24 MJ 386 (CMA 1987); *United States v. Hines, supra.* In the first place, it is identical in all pertinent parts with appellant's own pretrial admissions. Secondly, though the statement was given to law-enforcement officers, which might generally present a problem, *see United States v. Hines, supra,* it is not a problem here: As the military judge found, Mrs. Hughes is well-educated and an intelligent adult; the interview was short (about 20 minutes) and not oppressive; it was held where Mrs. Hughes worked, not at the Office of Special Investigations (OSI) headquarters; the OSI agent's testimony indicates that, in fact, Mrs. Hughes controlled the direction of the interview; at no time after giving the statement did she attempt to clarify it or recant; and, finally, there is no hint in the case anywhere that Mrs. Hughes would have any motive to hurt her husband— from all appearances, they had a sound marital relationship, with no reason for her to lie adversely to her husband's interests.

### IV

■ Pointing to our decision in *United States v. Melvin,* 26 MJ 145 (CMA 1988), that corroboration of a confession's truthfulness or reliability is necessary before

the confession can be a basis for conviction, Hughes argues that his wife's out-of-court statements are inadequate in that regard. Noting that *Melvin* holds the amount of corroborating evidence need be only slight, *United States v. Yeoman*, 25 MJ 1 (CMA 1987), and recognizing that the statements unambiguously asserted that appellant had used marijuana on the occasion charged, appellant wisely narrows his challenge.

Specifically, he asserts that his wife's conclusory statement that the substance he had used was marijuana amounted to no more than unsubstantiated opinion, with no evidence at all as to her ability to have formed that opinion and with no evidence at all from which the factfinders could have concluded that her opinion was valid (*e.g.*, whether the cigarette was hand-rolled; how it smelled when smoked; or how appellant acted after he had smoked it). *See* Mil.R.Evid. 701. We disagree.

First, the record reflects that the investigators told Mrs. Hughes, as a predicate to interviewing her, that they had spoken with her husband "in conjunction with a narcotics investigation" and that her husband had told them "about some drug activity prior to marrying her." The first mention during that interview that the substance in question was marijuana was by Mrs. Hughes. Inferentially, it may be concluded, then, that she had some independent basis for concluding that the substance she saw her husband use at her party was marijuana. The investigators did not plant that notion with her.

Second, Mrs. Hughes indicated in her interview that, when she saw her husband smoke the marijuana, she "threw a fit." In response, " '[H]e quit and that was the end of that. He has promised me never to use the stuff again and I believe him.' " The

factfinders could reasonably conclude from this comment that, had Mrs. Hughes been incorrect in her opinion of the substance she had seen her husband use, his response to her "fit" would have been quite different. Instead, he acquiesced in her insistence that he never do it again and contritely promised never to repeat his misconduct. Thus, appellant's confession is corroborated not only by his wife's categorization of the substance as marijuana but independently by his own conduct in response to her "fit"—conduct that inferentially confirmed her charge.

Upon these grounds, we conclude that appellant's confession of using marijuana on the occasion charged was adequately corroborated to permit his conviction.

## V

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

SULLIVAN, Judge (concurring):

I note that the second granted issue in this case was:

WHETHER APPELLANT WAS DE-NIED HIS RIGHT TO CONFRONT THE WITNESS AGAINST HIM WHEN THE COURT ADMITTED OVER DEFENSE OBJECTION HIS WIFE'S PRIOR STATEMENT IN ORDER TO CORROB-ORATE HIS CONFESSION.

Appellant's trial objection included a claim that the challenged evidence was hearsay. The military judge found that this evidence met the requirements of Mil.R.Evid. 803(24) and 804(b)(5). This hearsay issue was not expressly granted review, but it is clear no error occurred in this ruling.