UNITED STATES, Appellee,

v.

Sam J. DANCY, Staff Sergeant U.S. Marine Corps, Appellant.

No. 67,562.
CMR No. 90–1788.

U.S. Court of Military Appeals.

Argued Jan. 12, 1993.
Decided Sept. 27, 1993.

For Appellant: *Captain Hagen W. Frank*, USMC (argued); *Lieutenant M. A. Razim-Fitzsimons*, JAGC, USNR (on brief).

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel T. G. Hess*, USMC; *Commander W. F. Shields*, JAGC, USN and *Lieutenant Commander Neal H. Nelson*, JAGC, USNR (on brief).

*Opinion of the Court*

WISS, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Camp Foster, Okinawa, Japan, during December of 1988. Contrary to his pleas, he was found guilty of maltreating,

indecently assaulting, and wrongfully having sexual intercourse with Private First Class [D], USMC, in violation of Articles 93 and 134, Uniform Code of Military Justice, 10 USC §§ 893 and 934, respectively.[1] He was sentenced to a dishonorable discharge, confinement for 1 year, forfeiture of $450.00 pay per month for 12 months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged but suspended all confinement remaining after appellant's transfer back to the United States for processing for appellate leave. The Court of Military Review affirmed in an unpublished opinion on October 31, 1991.

This Court granted review[2] on the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN AFFIRMING THE TRIAL JUDGE'S DENIAL OF APPELLANT'S REQUEST FOR A MISTRIAL FOLLOWING THE GOVERNMENT'S FAILURE TO DISCLOSE AN INCRIMINATING LETTER WRITTEN BY APPELLANT, AND ITS SUBSEQUENT USE OF THAT LETTER AT TRIAL.

We hold that the military judge did not abuse his discretion in denying the defense motion for a mistrial.

## I. BACKGROUND

PFC [D], a female subordinate of appellant and new recruit who had just reported to her first permanent duty station, testified that appellant had twice used his military senior position to coerce her into having sexual intercourse and had in another separate attack sexually assaulted her. Denying the allegations, appellant testified that his relationship with PFC [D] was purely professional and that he did not maintain a friendship with her. Appellant asserted that PFC [D]'s motive to fabricate arose from appellant's fulfilling his responsibility as her supervisor and senior staff noncommissioned officer—counseling her about alcohol-abuse problems and insisting that she control her alcohol abuse or risk separation from the Marine Corps. The trial was a classic credibility battle between PFC [D] and appellant.

To challenge appellant's claim that his relationship with PFC [D] was strictly professional, trial counsel, during appellant's cross-examination testimony, confronted appellant with a letter that appellant had written to the victim's sister. This letter tended to contradict appellant's assertion of a professional relationship with PFC [D]. In this handwritten letter, casual and friendly in both style and tone, appellant disclosed personal information about himself, referred to PFC [D] with the nickname "Ski," stated that he and PFC [D] "have become very close friends," and suggested that he and the sister "become pen pals if nothing else."

Initially, without disclosing to the members the contents of the letter, trial counsel

1. Although charged with raping PFC [D], appellant was convicted of the lesser-included offenses of indecent assaults.

2. We heard oral argument in this case at Camp Pendleton, California, on Tuesday, January 12, 1993, without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed. 1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit. The United States Court of Military Appeals conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Services and the Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). It is hoped that the thousands of students, service persons, military and civilian attorneys, and members of the American public who witness these hearings will realize that America is a democracy that can maintain an Armed Force instilled with the appropriate discipline to make it a world power and yet afford the members of that Armed Force a fair and impartial justice system which does provide the full protection of the Constitution of the United States and Federal law to its members.

asked appellant to acknowledge that he wrote this letter, marked prosecution exhibit 9. Appellant, however, denied authorship. Trial counsel then established appellant's handwriting and signature by appellant's admission that a command log book, admitted into evidence, contained his handwriting and signature. Later during the cross-examination, when trial counsel gave appellant "one more opportunity" to acknowledge that he wrote this letter, appellant asked to consult counsel.

Rejecting a defense objection that the document related to a "collateral matter" and that the defense never had any notice of the document, the military judge directed appellant to answer the question; but in a session under Article 39(a), UCMJ, 10 USC § 839(a), appellant asserted his Fifth Amendment rights, declined to answer, and requested to consult with his counsel. Before the members he again exercised his privilege. Accordingly, the judge ordered appellant to remove himself from the witness stand and to return to his seat at the counsel table.

Upon motion of trial counsel, the military judge struck appellant's testimony. The military judge instructed the members that, because appellant had asserted his privilege against self-incrimination, the members must "disregard" the entire testimony of appellant but could "draw no adverse inference" from appellant's assertion of his constitutional rights.

Immediately the defense rested, and the Government called PFC [D] in rebuttal to authenticate prosecution exhibit 9 as appellant's letter to her sister. About a month-and-a-half before trial, PFC [D] had received the letter from her sister. It is unclear exactly when PFC [D] had delivered this letter to trial counsel, but trial counsel had obtained the letter sometime prior to trial and had failed to disclose it to the defense. After authentication, trial counsel offered the exhibit into evidence.

The defense initially objected on other grounds; but after a 35–minute recess for the defense to research this matter, defense counsel requested a further recess

"[t]o accurately prepare for a mistrial [motion] pursuant to 304(d)(1)." Defense counsel argued that Mil.R.Evid. 304(d)(1), Manual for Courts–Martial, United States, 1984, required trial counsel to disclose this statement of appellant and that trial counsel had disregarded the defense's ongoing discovery request, filed 5 months prior to trial, for "[a]ny remarks or statements made by the accused relating to the charges for disclosure." After trial counsel confirmed that the Government had possessed the document but had not disclosed it, the military judge continued the case for the weekend to allow counsel to evaluate the situation.

When trial reconvened, defense counsel moved for a mistrial. The military judge ruled that trial counsel had "ambushed" appellant and had erred by failing to disclose the letter to the defense. The discussion then focused on the appropriate remedy for this error.

Initially the military judge refused to grant a mistrial and declared, instead, that he would give the members an instruction. After listening to appellant explain, during an Article 39(a) session, that he wrote the letter at PFC [D]'s request to help her sister who was having personal problems, the military judge concluded that he was going to admit the letter—accompanied by appropriate instructions—so the members could properly understand appellant's testimony.

Instead, defense counsel argued that the judge should order the members to ignore the whole problem by reinstating appellant's direct and cross-examination testimony but striking all the evidence regarding the letter. The judge was unpersuaded. He presented defense counsel two options: Appellant could testify and explain the letter that would be admitted into evidence, or his testimony would remain stricken and the letter would be excluded.

Defense counsel then proposed to "solve this problem in an equitable manner" by the defense's offering the letter as a defense exhibit and questioning appellant about it after the military judge strikes

appellant's earlier answers on cross-examination relating to the exhibit. Over trial counsel's objection, the military judge agreed to this defense request. Again, he noted that trial counsel had "ambushed" appellant who "was obviously ruffled on cross-examination."

When the members returned to the courtroom, the military judge updated them on the developments concerning the letter. The judge explained in a detailed, three-page instruction that the letter was now a defense exhibit; that a court-martial is not a "trial by ambush" but a search for the truth; that trial counsel had the letter and had not disclosed it to the defense as he was required to do under the Military Rules of Evidence; that the judge's prior ruling to disregard appellant's testimony was reversed, and the members could consider all of Staff Sergeant Dancy's testimony except "the predicate questions with regard to this letter"; that appellant would explain the letter, but "we're going to proceed at this point as if the letter had never been shown to the accused"; and finally, that the members could not hold appellant's refusal to testify against him.

Following this instruction, appellant testified and explained that he wrote the letter at the request of PFC [D] to help her sister, who was having personal and family problems and had tried to commit suicide, and to reassure the sister and [D]'s family that somebody was "tak[ing] care of" and "looking out for" PFC [D] in Okinawa. Attempting to explain the informal style and tone of the letter, appellant testified that he wrote the letter as a rough draft but that inexplicably someone else had mailed his signed letter before it could be typed.

At the end of his initial argument on findings, trial counsel focused on the letter and tied appellant's credibility about the letter to his truthfulness regarding the charged crimes. He argued that appellant was "telling the truth about that letter to the same degree that he's telling the truth about each one of the incidents that occurred in the charge sheet." At the end of his closing argument, trial counsel said: "We know the truthfulness of his testimony about the letter. It was garbage. It was a lie, and Staff Sergeant Dancy is a liar."

As has been said, contrary to his pleas, appellant was found guilty of maltreating, indecently assaulting, and wrongfully having sexual intercourse with PFC [D].

## II.  DISCUSSION

### A.  The Error

Mil.R.Evid. 304(d)(1) provides that, "[p]rior to arraignment, the prosecution shall disclose to the defense the contents of all statements, oral or written, made by the accused that are relevant to the case, known to the trial counsel, and within the control of the armed forces." According to *United States v. Callara*, 21 MJ 259, 263 (CMA 1986):

> The disclosure requirement applies only to "relevant" statements; and the relevance of some pretrial statements made by the accused may not be foreseen until the defense has presented its case. Under those circumstances, the Government cannot be penalized for earlier nondisclosure. On the other hand, if there is a reasonable prospect that the statement might be offered in evidence during the trial, then disclosure is required.

The Government concedes that trial counsel should have disclosed the letter prior to trial, in accordance with Mil.R.Evid. 304(d)(1). We agree.

Appellant's admission that he "ha[d] become very close friends" with PFC [D] obviously was relevant to rebut appellant's assertion that he had maintained a strictly professional relationship with PFC [D]. *See United States v. Trimper*, 28 MJ 460(CMA), *cert. denied*, 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989); *United States v. Callara, supra* at 263. Moreover, the circumstances of this case do not present a situation where the relevance may not have been foreseen until the defense had presented its case (which other-

wise would explain the Government's non-disclosure). In the present case, as early as the investigation under Article 32, UCMJ, 10 USC § 832, appellant made an unsworn statement claiming his innocence and asserting his strictly professional association with PFC [D]. Accordingly, the letter should have been disclosed. Mil. R.Evid. 304(d)(1).[3]

■ In the area of discovery, military law has been preeminent, providing broader discovery than is granted to most civilian defendants and zealously guarding the right of an accused to prepare his case by openly disclosing the Government's evidence.[4] As broad discovery contributes substantially to the truth-finding process and is a substantial legal right of an accused, trial counsel had the duty to protect appellant's right to discover the material required to be disclosed by Mil.R.Evid. 304(d)(1). *See United States v. Green*, 37 MJ 88 (CMA 1993); *United States v. Callara, supra;* Rule 3.4(d), ABA Model Rules of Professional Conduct (1989); Standards 3-1.1(c) and 3-3.11(b), ABA Standards for Criminal Justice: The Prosecution Function

at 3.6 and 3.62 (1986);[5] Drafters' Analysis of RCM 701, Manual, *supra* at A21-29.

### B. The Sanction

With our conclusion that government disclosure was required, the remaining question is whether mistrial is the appropriate remedy. The sanction for nondisclosure is addressed in Mil.R.Evid. 304(d)(2)(B), which states:

> If the prosecution intents to offer against the accused a statement made by the accused that was not disclosed prior to arraignment, the prosecution shall provide timely notice to the military judge and to counsel for the accused. The defense may enter an objection at that time and the military judge may make such orders as are required in the interests of justice.

This Court has recognized that "the Rule does not specifically prescribe suppression of an individual statement by an accused. Instead, it grants authority to the military judge to 'make such orders as are required in the interests of justice'—orders which may include but certainly are not limited to

---

3. This case illustrates the unfortunate consequences of a trial counsel's disregard for the discovery rights of an accused. Trial counsel's gamesmanship resulted in disruption and delay of the legal proceedings that Mil.R.Evid. 304(d)(1), Manual for Courts–Martial, United States, 1984, was designed to prevent. The case was continued over a weekend to permit the defense to move for a mistrial, and the judge had to prepare and provide a lengthy and detailed curative instruction to the members regarding their consideration of this letter. Litigation of this issue consumes over 90 pages of the record.

  Discovery rules are intended to eliminate such "gamesmanship." *See generally* Standard 11–1.1, ABA Standards for Criminal Justice: Discovery and Procedure Before Trial at 11.7 and at 11.3S n.6a (1986); Drafters' Analysis of RCM 701, Manual, *supra* at A21–29. *See also United States v. Hughes*, 28 MJ 391 (CMA 1989), and *United States v. Hines*, 23 MJ 125 (CMA 1986)(rejecting gamesmanship by the defense in other contexts). The military judge's chastising the trial counsel on the record for failing to disclose the evidence here was appropriate. *United States v. Gomez*, 603 F.2d 147 (10th Cir. 1979) (reports federal judge's similar response to a prosecutor's failure to properly disclose evidence).

4. *See, e.g., United States v. Hart*, 29 MJ 407, 410 (CMA 1990); *United States v. Eshalomi*, 23 MJ 12 (CMA 1986); *United States v. Enloe*, 15 USC-MA 256, 35 CMR 228 (1965); Art. 46, UCMJ, 10 USC § 846; RCM 701(a)(1)(C), Manual, *supra*.

5. Commentary to Standard 3–1.1, ABA Standards for Criminal Justice: The Prosecution Function at 3.7 (1986) states:

  > Although the prosecutor operates within the adversary system, it is fundamental that the prosecutor's obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public. Thus, the prosecutor has sometimes been described as a "minister of justice" or as occupying a quasi-judicial position.

  (Footnote omitted.) Also, practice standards mandate: "The prosecutor should comply in good faith with discovery procedures under the applicable law[,]" and "[t]he prosecutor should not fail to make a reasonably diligent effort to comply with a legally proper discovery request." *Cf.* Standard 3–3.11(b), ABA Standards for Criminal Justice: The Prosecution Function at 3.62 (1986); *see* 50 Crim. L.Rep.2061, 2066 (March 4, 1992).

suppression of the pretrial statement as evidence." *United States v. Callara,* 21 MJ at 263; *see also* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 162–63 (3d ed.1991).

■ "Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused." *United States v. Rushatz,* 31 MJ 450, 456 (CMA 1990). It is appropriate only "whenever circumstances arise that cast substantial doubt upon the fairness or impartiality of the trial." *United States v. Waldron,* 15 USCMA 628, 631, 36 CMR 126, 129 (1966). The military judge's decision regarding motions for a mistrial will be measured for abuse of discretion.[6]

■ Although both *Trimper* and *Callara* provide some guidance as to factors to consider in this regard, neither case resolves the one before us. Where a remedy must be fashioned for a violation of a discovery mandate, the facts of each case must be individually evaluated. Moreover, the relief sought in *Trimper* and *Callara*—suppression of the undisclosed statement—is greatly different from the present case, where appellant ultimately offered the undisclosed statement as a defense exhibit but also now asserts that a mistrial was required.

■ Considering the facts of this case, we cannot say that the military judge abused his discretion in refusing to declare a mistrial. Several circumstances support the military judge in the remedial action that he took to correct trial counsel's failure to disclose the letter.

First, the military judge granted defense counsel an extended weekend continuance to evaluate the letter and to consider possible relief from trial counsel's failure to disclose. This delay gave the defense suf-ficient time to investigate the letter and to consider a trial strategy to respond to it. *See United States v. Trimper,* 28 MJ at 464; *United States v. Callara,* 21 MJ at 263.

Second, the judge accepted the defense proposal to "solve this problem in an equitable manner." He permitted defense counsel to offer the letter as a defense exhibit, and he struck appellant's earlier answers on cross-examination relating to the exhibit. Importantly, appellant seized the opportunity to testify about the letter. Where the defense adopted and offered the letter to the court as defense evidence and thereby grabbed the initiative in order to put the best spin possible on the letter, we cannot find prejudice to appellant from failure to timely disclose the evidence.[7] *See Hill v. United States,* 363 F.2d 176, 180–81 (5th Cir.1966)(defendant's testimony to the same effect as testimony of accountant cured alleged error in admitting accountant's testimony).

Finally, the military judge gave an extensive instruction to the members in order to straighten out the rather confusing preceding events.

Our examination of the record here convinces us that the instruction by the military judge cured trial counsel's erroneous failure to properly disclose the letter. It was not a perfunctory admonition to disregard the evidence but, instead, a detailed and lengthy explanation of trial counsel's error, the members' responsibility to disregard evidence regarding the letter, and their charge to consider only future evidence to be admitted. We are mindful of Justice Brandeis' statement that "[a]ppellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."

---

6. *United States v. Rosser,* 6 MJ 267 (CMA 1979); *United States v. Jeanbaptiste,* 5 MJ 374 (CMA 1978); *United States v. Patrick,* 8 USCMA 212, 24 CMR 22 (1957); S. Childress & M. Davis, 1 *Federal Standards of Review,* Trial Judge: Supervision and Discretion § 4.08 at 4–54 (2d ed. 1992).

7. In this context, it is important to point out that admissibility of the letter as evidence is not in contest, so the opportunity for the defense to put a positive light on it is especially weighty in measuring prejudicial impact from lack of timely notice of it.

*Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933).

In conclusion, the military judge fashioned a remedy that denied trial counsel the fruits of an improper cross-examination and that avoided prejudice to appellant from trial counsel's failure to disclose the letter. The unique circumstances of this entire record, including the other persuasive evidence of guilt, leave us in no doubt that the military judge did not abuse his discretion in denying appellant's motion for a mistrial in the procedings below.

## III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

COX, Judge (concurring):

The Government has conceded that the pertinent document should have been disclosed to appellant. Accordingly, I concur with the resolution of this case..