OPINION OF THE COURT
SUTER, Chief Judge:
Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of attempted rape in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (1976). He was sentenced to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of all pay for eight years, and reduction to the lowest enlisted grade. The convening authority approved the sentence.
The appellant assigns three errors, two of which concern military awards approved and presented by Major General (MG) John R. Galvin, the commander of the 24th Infantry Division (Mechanized) and Fort Stewart, Georgia, to four servicemembers who were involved in the appellant’s apprehension and testified for the prosecution at appellant’s trial. The third error alleges that the evidence was insufficient because the government failed to disprove the defense of intoxication.
The facts are relatively free of dispute. On the afternoon of 31 July 1982, appellant and his roommate visited several pawn shops near Fort Stewart to look for items to purchase. The two soldiers went to an establishment known as Military TV and Stereo which, in a grand opening, was sponsoring an outdoor waterbed wrestling contest among women attired in bathing suits and T-shirts. They joined the crowd, watched the contest, and each drank four or more cups of beer that were selling for a penny each.
At one point, the soldiers left the event and purchased a quart of rum and a fifth of tequila. Upon returning to Military TV and Stereo, they continued to watch the festivities for about three hours. By about 1730 hours, the appellant and another individual had consumed about two-thirds of the rum.
At about the same time, Mrs. Glenda Hargett and her husband, Private First Class (PFC) David Hargett, had an argument in their apartment not far from Military TV and Stereo. She complained that he neglected their six-month-old baby and at one point he pushed her. Eventually, *465 PFC Hargett left the apartment to shop and regain his temper. At about 1800 hours, the sixteen-year-old Mrs. Hargett, wearing purple shorts and a tank top, carrying her baby and a diaper bag, left the apartment in search of her husband. She eventually reached Military TV and Stereo.
While Mrs. Hargett was waiting to speak with a friend, the appellant, a stranger to her, approached her and began to talk about his wife and children and showed her pictures of his children. Soon thereafter, she left the store and began walking toward Fort Stewart and her home. Appellant followed Mrs. Hargett, caught up with her, and asked if he could walk with her. She consented.
About half way across a field located on Fort Stewart, appellant produced a knife and placed it against Mrs. Hargett’s neck. He pulled down her tank top, pushed her, and told her to move to a wooded area. Saying that his wife did not satisfy him, he kneeled over her prone body, removed her shorts and panties and pulled his pants down. He told her that if she would go along with him he would not kill her or her baby. Appellant sucked on Mrs. Hargett’s breasts and told her to orally stimulate his penis. She refused. When her baby began to cry, appellant told her that he would kill the baby if she did not quiet her. Mrs. Hargett then struck appellant and he responded by striking her several times, choking and biting her, and pulling her hair. He attempted, without her consent, to insert his penis into her vagina but was unable to do so. She then asked appellant if he would let her sit up to quiet her baby. He consented. After she began comforting the baby, appellant told her to fondle his genitals. She refused. He then lay on his back and told her to sit on him. Still holding her child, the naked Mrs. Hargett got up and sat on appellant’s knees.
Meanwhile, Mrs. Dawn Graber was walking near the wooded area and saw appellant and Mrs. Hargett. She ran home and told her husband, PFC Mark Graber, that she thought someone was being raped. He told her to tell PFC Gregory Deck, who had been working on a car with him, where he was going and he ran toward the wooded area. When - both soldiers reached the scene, Mrs. Hargett screamed rape and appellant attempted to flee. PFC Graber and PFC Deck apprehended the appellant and held him at knifepoint.
Meanwhile, two off-duty military police, Sergeant (SGT) Gregory Brammer and Private (PY2) Torrin Ford, were driving past the scene. They noticed PFC Graber and PFC Deck running and saw a naked woman standing nearby. They stopped to render assistance. PV2 Ford tended to Mrs. Hargett, who was nearly hysterical, and was told by her that the appellant tried to rape her. SGT Brammer ran to the location where PFC Graber and PFC Deck were holding the appellant and took custody of him. The appellant complained that they were off post and that civilian police should have jurisdiction. SGT Brammer warned appellant that anything he said could be used as evidence in a criminal trial. He searched appellant and found a large knife in his pocket.
A few days later, the Provost Marshal, Colonel (COL) David W. Humbert, decided that the four soldiers deserved recognition for their roles in preventing further harm to Mrs. Hargett and apprehending the appellant. He directed his operations officer to seek legal advice concerning the propriety of recognizing the soldiers prior to appellant’s trial. The trial counsel in this case told the operations officer that there was no legal objection to decorating the soldiers but such action should not occur until after the trial. On 5 August 1984, COL Humbert recommended that each of the four soldiers receive the Army Achievement Medal for their crime prevention role. On 12 August, MG Galvin, the 24th Infantry Division (Mechanized) and Fort Stewart commander, approved the awards in accordance with regulations. He personally presented the awards to SGT Brammer, PFC Graber, PFC Deck, and PV2 Ford on 9 September. The event was not publicized *466 and the ceremony was apparently a private one conducted in MG Galvin’s office.
An attempted rape charge was preferred against appellant on 2 August and eventually it was referred to a general court-martial on 18 August by Brigadier General (BG) Douglas Smith, the acting commander of the 24th Infantry Division (Mechanized) and Fort Stewart. MG Galvin subsequently substituted court members and added a court member. Appellant’s trial was conducted on 2 and 3 November. Each of the soldiers who received the medals testified for the prosecution.
The trial counsel learned of the award ceremony during the first half of September. He did not disclose the information to defense counsel because he did not consider the presentation of awards to be a factor bearing on a fair determination of appellant’s guilt or innocence.
The military judge gave the members a proper preliminary instruction concerning their court-martial duties. Defense counsel, during his subsequent voir dire examination of the court members, read the names of all potential witnesses in the case and asked the members if they knew any of them. The list included the four soldiers who received the medals. The members responded negatively.
After the court-martial, but before service of the post-trial review, the trial counsel approached the defense counsel and told him about the awards ceremony. On 16 December, the defense counsel received the post-trial review that discussed the issue of whether the convening authority’s participation in the awards ceremony disqualified him from taking further action in appellant’s case. On 10 January 1983, the defense submitted a rebuttal to the post-trial review urging that the case should not be reviewed or acted upon by anyone in the local command structure. The convening authority charitably acceded to the request and the case was transferred to the commander of the U.S. Army Signal Center and Fort Gordon for review and action.
Before this Court, the appellant alleges that BG Smith was disqualified from referring the charge to a general court-martial because MG Galvin had decorated four prosecution witnesses for their apprehension of appellant and thus had publicly demonstrated a personal feeling or interest in the outcome of appellant’s trial. He also alleges that the trial counsel deliberately and improperly failed to disclose to defense counsel, prior to trial, that MG Galvin had decorated the four prosecution witnesses and thus deprived appellant of due process of law. We disagree with both allegations.
Article 22(b), UCMJ, 10 U.S.C. § 822(b), provides that if a convening authority is an accuser, the court shall be convened by superior authority. Article 1(9), UCMJ, 10 U.S.C. § 801(9), defines an accuser as a person who signs and swears to charges, directs that charges nominally be signed and sworn to by another, and any person “who has an interest other than an official interest in the prosecution of the accused.”
The Court agrees with the appellant’s assertion that if MG Galvin were an accuser within the meaning of Article 1(9), UCMJ, BG Smith would be disqualified from referring the appellant’s case to trial as the acting convening authority. Article 22(b), UCMJ; United States v. Corcoran, 17 M.J. 137, 139 (C.M.A.1984). We find that MG Galvin was not an accuser merely because he approved and presented Army Achievement Medals to four prosecution witnesses and that BG Smith was not disqualified from referring the appellant’s case to trial as a result of his superior’s involvement with these awards.
It is clear that one “who has an interest other than an official interest in the prosecution of the accused” is disqualified to refer a case to trial. The determination whether one has “other than an official interest” is governed by whether “under the particular facts and circumstances ... a reasonable person would impute to him [the convening authority] a personal feeling or interest in the outcome of the litigation.” Brookins v. Cullins, 3 U.S.C.M.A. 216, 218, 49 C.M.R. 5, 7 (1974), quoting United States v. Gordon, 1 U.S.C.M.A. *467 255, 260, 2 C.M.R. 161, 166 (1952). We find, however, that the inquiry with respect to commanders is rendered more complex because a commander’s responsibilities in situations such as this are dictated by several distinct requirements.
Our review of the relevant regulations leads us to the conclusion that MG Galvin, who was an installation commander and a convening authority, acted solely in an official capacity in this case. MG Galvin was responsible for maintaining good order and discipline on the installation,[1] operating a crime prevention program,[2] efficiently and economically operating installation activities,[3] and administering the military awards program.[4] While these official interests may, at times, overlap, they are not antithetical and one goal need not be abandoned merely because other interests are present. We note, for example, that pursuant to the Army’s Victim/Witness Assistance Program, which became effective on 1 August 1984, “[a] person’s status as a victim or witness ... should not discourage appropriate recognition ... of conduct ... which aids or supports military law, order or discipline, and which would otherwise merit official recognition____” Para. 18-2 c, Army Regulation 27-10, Legal Services — Military Justice (1 Jul. 1984). While the program contemplates that recognition will “normally ... be delayed until after local disposition of the incident,” id., we find that this guidance is not intended to discourage timely recognition but is meant to prevent unnecessary litigation such as this. While MG Galvin’s timing could have been better, this Court considers the awards he approved and presented to be the type of positive recognition for good citizenship which is both highly appropriate and long overdue. His decision to reward Mrs. Hargett’s rescuers was not necessarily predicated on appellant’s guilt. It was the soldiers’ willingness to investigate suspected foul play, despite the danger to their personal safety, that was recognized. Although the Victim/Witness Assistance Program was not in effect at the time of these awards, the presentation of these awards was clearly consistent with the Army’s policies regarding decorations and awards in effect at that time.
We now turn to the issue of the government’s failure to disclose to the defense, prior to trial, that the awards had been presented. In this regard, we perceive an important distinction between deliberate nondisclosure, which we find extant in this case, and improper failure to disclose, which appellant alleges to be prosecutorial misconduct mandating dismissal. We find no such misconduct. The approval and presentation of awards recognizing civic concern is evidence material neither to guilt nor to punishment, and, therefore, its deliberate nondisclosure does not meet the standard for prosecutorial misconduct announced in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Furthermore, we find that the failure of the government to disclose the awards information did not adversely affect the ability of defense counsel to effectively cross-examine the prosecution witnesses who received awards. The main defense asserted at trial was that appellant was intoxicated. The receipt of awards by four prosecution witnesses did not impact on the appellant’s ability to assert his defense. We find no evidence that defense cross-examination concerning appellant’s level of intoxication at the time of the offense was inhibited or otherwise adversely affected either by the fact that the prosecution witnesses had previously been congratulated for their involvement in this apprehension or because the defense was unaware of this recognition.
*468 We also hold that the defense counsel’s ability to effectively conduct a voir dire examination was not hampered because of the nondisclosure. After the military judge instructed the court members to disclose any information that would inhibit a full, fair, and impartial consideration of the case, the defense counsel asked the members specific questions designed to elicit information regarding familiarity with the alleged offense and the circumstances surrounding it. He was satisfied with the responses and did not challenge any member. Even if the members were aware of the awards, we find that this knowledge would not have per se been disqualifying. United States v. Russell, 43 C.M.R. 807 (A.C.M.R.1971).
In the instant case, the court members specifically informed the court that they had no personal feelings which would inhibit their ability to sit impartially. We believe that the opportunity for uninhibited voir dire examination of the potential court members by the defense effectively enabled the defense to discern any possible taint in this regard. In addition, the questions posed by the military judge and the court members’ responses thereto persuade this Court that the court member selection process was not tainted by the government’s nondisclosure.
Absent a finding that the government’s failure to disclose prejudiced the rights of the accused or that it was improper for some other reason, we find no harm that requires redress. Notwithstanding our determination that the government’s nondisclosure does not constitute legal error, we are at a loss to ascertain why the government chose to withhold this information and create needless appellate issues. We find gamesmanship such as this to be precisely the behavior which the broad requirements of disclosure now contained in R.C.M. 701 were intended to discourage. “The rule is intended to promote full discovery to the maximum extent possible consistent with legitimate needs for nondisclosure ... and to eliminate ‘gamesmanship’ from the discovery process.” Manual for Courts-Martial, United States, 1984, App. 21, R.C.M. 701. We do not believe that self-inflicted wounds such as this contribute to the “truthfinding process and to the efficiency with which it functions.” Id.
The appellant’s last allegation is that the evidence is insufficient because the government failed to disprove the defense of voluntary intoxication beyond a reasonable doubt. We disagree. The record of trial is replete with evidence of the appellant’s words and deeds, all of which establish beyond a reasonable doubt that he understood what was happening, knew what he was doing, and formed a specific intent to rape Mrs. Hargett.
The findings of guilty and the sentence are affirmed.
Senior Judge RABY and Judge COHEN concur.

. Army Regulation 1-32, Administration — Disciplinary Control of U.S. Personnel (23 Nov. 1977).

. Army Regulation 190-31, Military Police — Department of the Army Crime Prevention Program (1 Jan. 1982).

. Army Regulation 210-10, Installations — Administration (12 Sep. 1977).

. Army Regulation 672-5-1, Decorations, Awards and Honors — Military Awards (3 Jun. 1974).