UNITED STATES

v.

**Captain Glen A. TRIMPER, 153–56–9975 FV, United States Air Force.**

**ACM 26211.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Feb. 1987.

Decided 23 March 1988.

Appellate Counsel for the Appellant: Linda MacLean, Anchorage, Alaska, Michael L. Sandul, Odenton, Maryland, Colonel Leo L. Sergi and Major William J. Reichart.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr. and Major Carole W. Hanson.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

The paramount issue before us is one of first impression: Is the prosecution required to disclose to the defense under R.C.M. 701 the nature and extent of its rebuttal evidence? Appellate defense

counsel argue that R.C.M. 701 should be broadly interpreted to include all evidence within the government's possession so as to preclude "trial by ambush." With surprising candor, they argue that such a disclosure requirement would permit "... an accused to be more circumspect in [his] testimony, limit it to the matters at hand and not make broad statements which may be subject to collateral attack." On the other hand, appellate government counsel maintain that the prosecution is not required "... to assist the accused in structuring his testimony so that it may not be contradicted."

The appellant was charged with wrongfully using cocaine and marijuana on divers occasions between 1 May 1985 and 1 August 1986. The evidence of the alleged drug use came from witnesses who included his former wife and several close friends who themselves were drug users and who, for the most part, testified under some form of immunity. These individuals all stated they saw the appellant use cocaine and marijuana at various times and places during the period alleged.

The appellant attempted to undercut this testimony by establishing on cross-examination that each had a motive to lie because of a past relationship with him. For example, the appellant suggested that since his former wife came from a family with strong religious beliefs, she falsely testified about him using drugs to justify her divorce. Additionally, the appellant contends that Gary Nelson, a neighbor and former close friend, also lied when he stated he saw him use drugs. The defense maintained that Nelson's testimony was in retaliation for the appellant having told the authorities about the former's pension fraud activities. The defense also urged that Nelson's subsequent marriage to the appellant's former wife implied an unsavory relationship between the two prior to her divorce and gave each a reason to falsely claim the appellant used drugs.

Senior Airman Natividad Hunt became romantically involved with the appellant in April 1986, after his wife left him. The two lived together for about six weeks. Hunt stated that during this time, she saw the appellant use cocaine approximately 20 times in addition to marijuana on numerous occasions. On one occasion after the appellant had snorted cocaine she had her head on his chest and could hear his heart pounding erratically.[1]

The appellant suggested that Hunt's account of his alleged drug use was in revenge for him asking her to move out. He described their relationship as "... friends to lovers to I couldn't stand to be around her, she's just a space cadet." Hunt admitted she had told a former boyfriend she was pregnant when she was not, so he would not leave her.

Linda Dale is a civilian employee assigned to the base legal office and has daily contact with the appellant who is also assigned there. Both Mrs. Dale and her husband, Staff Sergeant Michael Dale, were close friends of the appellant and were familiar with the odor and appearance of marijuana. Both testified that they had seen the appellant use marijuana at parties and social gatherings. Additionally, Mrs. Dale indicated that the appellant had admitted to her his use of cocaine. The appellant intimated that Mrs. Dale was biased toward him because he had rejected her overtures for a sexual liaison.

■ On direct examination the appellant categorically denied any drug involvement during the period alleged. On cross-examination the prosecution questioned him about the time related by Senior Airman Hunt where his heartbeat increased rapidly following his cocaine use. The appellant testified the incident never occurred and that Hunt was lying. When asked specifically if he had used "... cocaine at any time the night [of the incident]?", the appellant replied, "*I have never used cocaine.*" (Emphasis added.) The government argues, both at trial and on appeal, that this sweeping denial of cocaine use by the appellant entitles it to introduce extrinsic evidence in rebuttal to contradict that claim. We agree. *United States v. Gar-*

---

1. Tachycardia, or accelerated heart rate, is a symptom of cocaine use.

*cia–Garcia,* 25 M.J. 652 (A.F.C.M.R.1987); *pet. denied,* 26 M.J. 85 (C.M.A.1988); *cf. United States v. Strong,* 17 M.J. 263 (C.M.A.1984).

The evidence the prosecution sought to present was an admission by the appellant to Mrs. Dale that he had been "partying" heavily and had obtained a private urinalysis which established he had cocaine in his system. Additionally, the prosecution offered evidence that on 4 September 1986, the Humana Hospital Alaska laboratory performed a drug screen test on the urine of "Glen Trimper, male, age 30" which was positive for cocaine. The doctor who took the urine testified that it was provided by an individual wearing an Air Force officer's uniform who was approximately six feet one inch tall, average build, with "sandish, dark blond" hair, who stated he was a lawyer. The physical description and occupation of the individual seeking the drug test fits the appellant.

The defense moved to suppress this rebuttal evidence and to preclude cross-examination of the appellant in this area because the prosecution had not complied with R.C.M. 701 by disclosing the existence of such evidence. The government contends that the disclosure of the laboratory test was not required as it was not "... intended for use by the trial counsel as evidence *in the prosecution case-in-chief at trial.*" (Emphasis added.) Conversely, the appellant argues that the test was subject to disclosure as it was "... *material to the preparation of the defense* ..." (Emphasis added.) *See* R.C.M. 701(a)(2)(B). Further, that the laboratory report was discovered just prior to trial was unimportant as the prosecution has a "continuing duty to disclose" additional evidence it has uncovered which is subject to discovery. *See* R.C.M. 701(d). After the trial judge declined to suppress the rebuttal evidence or to preclude cross-examination in this area, the appellant denied submitting a urine sample to the hospital laboratory for drug testing.

Military law provides a direct means of discovery that is broader than that normally available to an accused in a civilian criminal prosecution. *United States v. Eshalo-*

*mi,* 23 M.J. 12 (C.M.A.1986). R.C.M. 701 is a melding of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds that due process requires the prosecution to disclose to the defense any *exculpatory* evidence it has in its possession, with Article 46 of the Code which requires the defense to have an equal opportunity to obtain witnesses and evidence. Its stated purpose is to provide for a legitimate need for nondisclosure and to eliminate "gamesmanship" from the discovery process. *See* analysis to R.C.M. 701, M.C.M.1984, App. 21, A21–29. The rule generally parallels the disclosure practice followed by the federal district courts. *See* Fed.R.Crim.P. 16. For this reason the federal decisions in this area may be profitably examined for guidance.

■ *Brady v. Maryland, supra,* did not create a federal right of pretrial discovery, *United States v. Ball,* 547 F.Supp. 929 (E.D.Tenn.1981), and the discovery practice is governed by the criminal procedure rule involved, i.e., R.C.M. 701. *Cf. United States v. Clevenger,* 458 F.Supp. 354 (E.D. Tenn.1978). We interpret R.C.M. 701(a)(2)(A) & (B) as requiring the trial counsel to disclose to the defense: 1) any *exculpatory* evidence it possesses as mandated by *Brady v. Maryland, supra;* and 2) the evidence it intends to offer in its *case-in-chief.* This latter requirement does not require the prosecution to disclose the minutiae of its evidence, its trial strategy or legal theories. *United States v. Elam,* 678 F.2d 1234 (5th Cir.1982); *United States v. Peifer,* 474 F.Supp. 498 (E.D.Penn.1979). There is no constitutional right to the discovery of evidence that is not exculpatory. *Griffin v. Commonwealth,* 606 F.Supp. 941 (E.D.Va.1985); *aff'd,* 780 F.2d 1018 (4th Cir.1985); *cert. denied* 476 U.S. 1120, 106 S.Ct. 1982, 90 L.Ed.2d 665 (1986); *see also United States v. Krauth,* 769 F.2d 473 (8th Cir.1985).

The defense does not claim that the prosecution deliberately suppressed material evidence that was favorable to the appellant, *see United States v. Kern,* 22 M.J. 49 (C.M.A.1986), and indeed it had not. Far from being helpful, the evidence estab-

lished that the appellant was untruthful when he testified he had never used cocaine. Appellate defense counsel's main thrust is that the disclosure of the laboratory test and the testimony concerning it was required by R.C.M. 701(a)(2)(B), and had the appellant known the prosecution had obtained the test results, he would have testified differently on cross-examination.

In *United States v. Callara*, 21 M.J. 259, 262 (C.M.A.1986), Chief Judge Everett, in discussing rebuttal evidence under Mil.R. Evid. 304, suggested that the sound administration of criminal justice favors disclosure of rebuttal evidence. However, Chief Judge Everett went on to say that, "Obviously, the disclosure rules were never designed to give comfort to an unscrupulous witness who plans to falsify his testimony." *Supra*, at 263. The federal courts have generally concluded that Fed.R. Crim.P. 16 requires the prosecution to disclose to the defense only the non-exculpatory evidence it intends to offer in its case-in-chief. *United States v. Kilroy*, 523 F.Supp. 206 (E.D.Wisc.1981); *United States v. Bremer*, 482 F.Supp. 821 (W.D. Okl.1979). While the appellant denied he was the individual who requested the drug test, it can be inferred from the transcript that he was not surprised at the existence of the test results, but only that the prosecution was also aware of it.

■ We hold that rebuttal evidence is not discoverable under R.C.M. 701 unless it is exculpatory in nature or material to punishment. The challenged evidence was not exculpatory and was not offered in the case-in-chief. Rebuttal evidence is that "given to explain, repel, counteract, or disprove facts given in evidence by the adverse party." *United States v. Callara, supra*, at 264. By definition it is offered after the opposing party has rested its case. Had the President in his rule making capacity under Article 36 of the Code wished to make rebuttal evidence discoverable under R.C.M. 701, he could have done so. That it was omitted lends support to the conclusion that it is not subject to disclosure under R.C.M. 701. *See generally*

*United States v. Ryland*, 806 F.2d 941 (9th Cir.1986).

■ The appellant also argues, citing *United States v. Callara, supra*, and *United States v. Reynolds*, 15 M.J. 1021 (A.F.C. M.R.1983), that the statement by him to Mrs. Dale that he had obtained a private urinalysis that had come back positive for cocaine should have been suppressed because the prosecution failed to disclose its contents to the defense as required by Mil. R.Evid. 304(d)(1). Again we appear to be sailing in unchartered waters. The challenged statement was not obtained by a criminal investigator or anyone connected with government as were the situations in the *Callara* and *Reynolds* decisions. Here, the statement was the result of a conversation motivated by friendship where the appellant could not possibly have thought that it was official in nature. *See United States v. Duga*, 10 M.J. 206 (C.M.A. 1981). While the rule itself makes no distinction between statements taken by law enforcement agents and those in an official capacity and statements that were the result of a casual conversation, the analysis of Mil.R.Evid. 304 suggests they should be treated differently. Rule 304 deals with the admissibility of "an involuntary statement" obtained through the actions of officials or agents of the United States in a governmental capacity. *See* analysis to Mil.R.Evid. 304, App. 22, A22–9. Since the proffered statement was not given to a government agent during an interrogation, the prosecution was not obligated to disclose its contents to the defense under Mil. R.Evid. 304, and further, since it was not exculpatory in nature and not offered in the government's case-in-chief, disclosure was not required under R.C.M. 701. *United States v. Jackson*, 757 F.2d 1486 (4th Cir.1985); *United States v. Pollack*, 534 F.2d 964 (D.C.1976).

Discovery matters are within the sound discretion of the trial judge and are reversible only upon an abuse of that discretion. *United States v. Crow Dog*, 532 F.2d 1182 (8th Cir.1976). The discovery issues that confronted the trial judge are novel, and, as we have stated earlier, involve questions

of first impression. We find no basis to overturn his rulings.

The remaining assigned errors are resolved against the appellant. Our review of the trial transcript convinces us that only so much of the approved sentence as provides for a dismissal, confinement for three years and total forfeitures of all pay and allowances is appropriate. The findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.