UNITED STATES, Appellee,

v.

Sergeant Duane R. ADENS, United
States Army, Appellant.

ARMY 9801084.

U.S. Army Court of Criminal Appeals.

3 Jan. 2002.

For Appellant: Captain Stephanie L. Haines, JA (argued); Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA (on brief); Captain Stephanie L. Haines, JA (on brief on specified issues); Major Imogene M. Jamison, JA; Major Mary M. McCord, JA; Captain Sean S. Park, JA.

For Appellee: Captain Susana E. Watkins, JA (argued); Major Anthony P. Nicastro, JA; Major Daniel G. Brookhart, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Paul H. Turney, JA; Major Paul T. Cygnarowicz, JA; Captain Susana E. Watkins, JA (on brief on specified issues).

Before TOOMEY, Senior Judge, CANNER and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge. This case is before the court for review under Article 66, UCMJ, 10 USC § 866.

The government's evidence of appellant's cocaine use consisted of the testimony of a civilian registered source who himself was a regular cocaine user and expert testimony concerning scientific hair analysis of appellant's pubic hair indicating chronic cocaine use. Pretrial motions consumed over 900 pages of this 1,998-page record of trial. The two-prong defense strategy became evident early in the pretrial proceedings: (1) to discredit the testimony of the government's registered source; and (2) to exclude, or discredit, the results of the tests of appellant's pubic hair.

From the very beginning of the trial, a critical issue was whether pubic hair seized from appellant was placed in one or two small, ring-size boxes. The testing laboratory's litigation packet, provided to both parties prior to the referral of charges, reported receiving two, small, ring-size boxes of pubic hair. During pretrial hearings, all persons present when appellant's pubic hair was seized testified that the hair was placed in one, small, ring-size box. Additionally, two employees from the laboratory testified during pretrial hearings that their hair collection kits only contained one small box for pubic hair. Prior to opening statements, the defense had admitted into evidence a sample hair collection kit it obtained from the laboratory, which also contained only one collection box for pubic hair. Hence, whether the collection kit used in appellant's case contained one or two ring-size boxes and whether the samples tested were, in fact, seized from the appellant were material issues regarding the evidentiary value of the hair analysis results.

Despite an ongoing discovery request from the defense to inspect all real evidence that the government intended to offer at trial on the merits, the trial counsel delayed disclosing, until the government's case-in-chief, that the government had four unused collection kits from this laboratory, received in the same mailing envelope with the kit used in appellant's case, each of which contained two, small collection boxes for pubic hair. The military judge ruled that the trial counsel's late disclosure violated the rules of discovery and constituted prosecutorial misconduct, but that it did not warrant a mistrial. Instead, she fashioned a remedy that included the exclusion of all evidence regarding the undisclosed collection kits, but she failed to give a curative instruction to the members to disre-

gard testimony they had already heard about the kits that the government had failed to disclose to the defense. We hold that, under the facts of this case, the trial counsel's failure to disclose these material tangible objects as soon as practicable after discovery, in conjunction with the military judge's failure to give the members a curative instruction to disregard the already admitted testimony concerning the undisclosed evidence, materially prejudiced appellant's substantial right under Article 46, UCMJ, 10 USC § 846, to have equal opportunity to the evidence against him, thereby prejudicing his trial strategy and materially affecting not only his counsel's presentation of the defense's case, but also his counsel's credibility before the members. UCMJ art. 59(a), 10 USC § 859(a).

## Findings of Fact

Pursuant to Article 66(c), UCMJ, we make the following findings of fact: [1]

1. On 8 January 1997, Special Agent (SA) P, Criminal Investigation Command (CID), obtained a search authorization from a military magistrate to seize pubic hair from appellant for testing for suspected cocaine use (App.Ex. I). On Friday, 10 January 1997, SA P had some of appellant's pubic hair seized by a medical doctor (Dr. G) pursuant to this search authorization. Special Agent P and Mr. N (a civilian attorney attending at appellant's request) were present during the seizure. The seized hair was placed in *two,* ring-size, unmarked, unsealed "Collection Method B" boxes (1 3/4″ by 2 1/4″) and then placed in a larger "Protectikit" Hair Specimen Collection Kit (2 1/4″ × 6″), all of which were provided to CID by National Medical Services (NMS) Laboratories (Pros.Ex. 5). Special Agent P sealed the Protectikit box with security tape provided by NMS, dated and initialed the seals, and initiated the chain of custody with Dr. G's signature before leaving the room where the hair was collected (Pros.Ex. 2). Special Agent P placed the

evidence in a temporary CID safe over the weekend and provided it to the Fort Belvoir CID evidence custodian on Monday, 13 January 1997. On 29 January 1997, the CID evidence custodian forwarded the hair sample to NMS for testing. National Medical Services subsequently sent a 60–page litigation packet (Pros.Ex. 5), dated 12 June 1997, to the Fort McNair Staff Judge Advocate. This litigation packet included photocopies of the eyeglass-size, Protectikit box, with security seals, as received by NMS, as well as photocopies of *two,* ring-size, unmarked, unsealed "Collection Method B" boxes which were removed by NMS personnel from the larger, sealed Protectikit box. The litigation report also indicated the weight of each of the two "Collection Method B" boxes. National Medical Services retained custody of the hair samples contained in the two "Collection Method B" boxes (Pros.Ex. 1) for over one year, from 31 January 1997 until 20 May 1998 (Pros.Ex. 2).

2. On 16 September 1997, a single charge and specification were preferred against appellant alleging wrongful use of "crack" cocaine in Fairfax County, Virginia, between on or about 1 April 1996 and on or about 5 January 1997. On 9 January 1998, the commander, Military District of Washington, referred the charge and specification to a special court-martial. Appellant previously had demanded trial by court-martial pursuant to Article 15, UCMJ, and objected to summary court-martial proceedings for this same offense. UCMJ art. 15(a), 20.

3. On 3 January 1998, civilian defense counsel submitted a detailed, written "Request for Discovery" specifically citing that it was made under Article 46, UCMJ, Rule for Courts–Martial [hereinafter R.C.M.] 702 [sic],[2] Military Rule of Evidence [hereinafter Mil.R.Evid.] 304(d)(1), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This continuing request included

---

1. While we are in general agreement with the military judge's findings of fact, we have elected to substitute our own findings of fact. UCMJ art. 66(c); *see also United States v. Morris,* 44 M.J. 841, 843 (Army Ct.Crim.App.1996), *aff'd,* 49 M.J. 227 (1998).

2. The request erroneously lists R.C.M. 702 (which concerns depositions) rather than R.C.M. 701, but it is clear from the title and content of the document, as well as the government's written response thereto, that the government understood that "702" was a typographical error for "701."

"any and all information which may be or become of benefit to the accused in preparing or presenting his defense at trial" and "[t]he opportunity to inspect all real evidence that the government intends to offer at trial on the merits" (App.Ex. II, enclosure).

4. On 30 March 1998, an Article 39(a), UCMJ, session was held to resolve numerous pretrial issues, including a defense motion (App.Ex. III) to compel DNA testing of appellant's hair sample. The defense motion for DNA testing alleged that CID may have tampered with or contaminated appellant's hair sample with that of Sergeant F, another soldier whose pubic hair had recently been tested as positive for cocaine use by NMS. The only witness on this motion, SA P, testified that appellant's pubic hair was placed in *one* ring-size box provided by NMS, that he sealed this small box with security tape provided by NMS, and that he initialed and dated across the seal. (R. at 19.) The judge found as fact that appellant's hair was placed in *one*, small, ring-size box and denied the defense motion for DNA testing (App.Ex. LXI).

5. During a R.C.M. 802 conference on 27 May 1998, the deadline for filing motions was set for 26 June 1998. A motions hearing was scheduled for Monday, 20 July 1998, with trial on the merits to begin the next day. On Friday, 17 July 1998, civilian defense counsel orally informed trial counsel that the defense was filing a motion to exclude appellant's hair sample because of an unreliable chain of custody; specifically, that SA P testified on 30 March 1998 that he seized *one*, ring-size, box of hair from appellant, but that *two* were in fact sent to the laboratory. (R. at 372–400.)

6. On Saturday, 18 July 1998, trial counsel contacted SA P at home and directed him to report to the Fort Belvoir CID office, with the evidence custodian, so that the prosecution could examine the box containing the hair. Trial counsel and CPT H (a Funded Legal Education Program officer who was assisting the prosecution) examined Prosecution Exhibit 1 and verified that there were *two* small boxes of hair inside the larger box that was shipped to the laboratory for analysis.

7. On Sunday, 19 July 1998, civilian defense counsel filed his written motion (App. Ex. XXI) with the court and the trial counsel to suppress appellant's pubic hair on the ground that the evidence had been tampered with in that only *one* ring-size box of hair was seized from appellant, but *two* ring-size boxes were mailed to the laboratory for analysis.

8. On Monday, 20 July 1998, while arguing that the court should not even hear the defense motion (App.Ex. XXI) because it was untimely filed, trial counsel noted that on 18 May 1998, the defense stated (apparently in an e-mail not included in the record) that Dr. F from the NMS laboratory was expected to testify that the laboratory received appellant's hair "in two samples in one box, contrary to the expected procedure," but that he "was unable to explain how the sample was found in this condition given the testimony of CID Agent P[ ], which indicated no dividing." (R. at 386.) The remainder of Monday was spent litigating a *Daubert*[3] motion (*see* App. Ex. LXII), during which civilian defense counsel offered a sample collection kit that he received from NMS that contained only one, slightly larger, "Collection Method B" box (App. Ex. XXVIII, later renumbered as Def. Ex. A).

9. On Tuesday, 21 July 1998, the parties began presenting evidence on the defense motion to suppress appellant's hair because the box/boxes had been tampered with. Doctor G (R. at 615–40) and appellant (R. at 641–76) both testified that only one box of hair was seized from appellant. Doctor F, a witness from NMS, testified that the NMS hair collection kits contained only one "Collection Method B" box (small, ring-size box). (R. at 682.) Special Agent P testified that, contrary to his original 30 March 1998 testimony, he was now 100% certain that he filled two small boxes with appellant's hair. (R. at 726.)

---

3. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

10. Early Tuesday afternoon after the Article 39(a), UCMJ, session had begun, SA S, at SA P's request, gave CPT H a post-marked envelope addressed to SA S from NMS that contained four unused NMS hair collection kits, but that originally contained five or six NMS collection kits. The collection kit used in appellant's case was received from NMS in this envelope, along with literature on hair analysis and NMS documents explaining how to request various types of tests. (R. at 1478–80). Captain H examined two of these kits, determined that each of them contained two "Collection Method B" boxes, entered the courtroom, and passed a note to the trial counsel advising that CID had NMS collection kits with two boxes in them. (R. at 1462–69, 1502.) After the court recessed on Tuesday evening at 1858 hours (R. at 856), CPT H and the trial counsel examined each of the four unused collection kits and discovered that each kit contained two, small, "Collection Method B" boxes. They went to dinner together about 2100 hours that evening. (R. 1469–70.) During their discussions that evening, CPT H and the trial counsel recognized that if these kits were authentic, they corroborated SA P's revised testimony that he collected two small boxes of pubic hair from appellant. Trial counsel tasked CPT H to verify the authenticity of these four collection kits and to determine how to get them admitted. (R. at 1503–06.)

11. The Article 39(a), UCMJ, session resumed at 0745 hours, Wednesday, 22 July 1998. Mr. N, appellant's attorney at the time the hair was seized, testified (R. at 857–881) that only one box of hair was seized from appellant. After hearing argument from counsel, the military judge denied the defense motion, ruling that the two "Collection Method B" boxes in Prosecution Exhibit 1 contained the pubic hair sample collected from appellant on 10 January 1997 (R. at 911; App. Ex. LXIII). The military judge then admitted the sample NMS collection kit, obtained by the defense, that contained only one, slightly larger, "Collection Method B" box (Def. Ex. A, previously marked as App. Ex. XXVIII). (R. at 930–31.) Trial with the members began at 1248 hours. (R. at 931.) Immediately prior to opening statements, the military judge admitted, at the request of the

defense, a verbatim copy of SA P's 30 March 1998 testimony (R. at 1026–34; Def. Ex. B). Opening statements began at about 1545 hours. (R. at 1026, 1036.) Trial counsel did not mention anything about two collection boxes in his opening statement, but cautioned the members to pay particular attention to any theories alleging that SA P, or someone else, tampered with the evidence. (R. at 1046–47). Civilian defense counsel's opening statement attacked the government case on several points, including how one small collection box became two:

And this is the part that the trial counsel left out, Dr. G[ ] went through a procedure to remove the pubic hair from Sergeant Adens. And he's going to testify that when he conducted that procedure he was provided a little box just like this one **(holding up collection method B box)** which is a National Medical Center collection method B box, and he clipped Sergeant Adens' pubic hair and he put it in one box. One of those little boxes right there. Sergeant Adens also witnessed the procedure. He was sitting at about a 30 degree incline and he had some concern about what was happening, obviously, and he watched as the hair was placed into one of those boxes. And Sergeant Adens' attorney watched the procedure. And Mr. N[ ] watched the doctor put Sergeant Adens' hair into one of those boxes. Special Agent P[ ] gave testimony in this case on the 30th of March 1998, Defense Exhibit B, and you're all going to be provided a copy of this, in which Special Agent P[ ] described placing Sergeant Adens' hair into one of those boxes, his sworn testimony. The military judge is going to instruct you on how you can use that testimony, but it is powerful testimony, and it is corroborative of every other witness. What got delivered to National Medical Services was two little boxes with pubic hair in it. The government witness Mr. P[ ] has new and improved testimony that you'll hear in this court-martial. But remember before it was an issue he gave that testimony. The testimony that is corroborative of every other witness in the room.

(R. at 1049–50).

12. Immediately after opening statements, SA P testified as the government's

first witness. He explained how appellant's pubic hair was seized and placed in two small collection boxes. (R. at 1062–63.) He also stated that he erroneously testified on 30 March 1998 that he placed appellant's hair in one small collection box, but that after reviewing the collection kit used (Pros.Ex. 1), he is now certain that he collected two small boxes of hair from appellant and sealed them both in one larger box. (R. at 1109.) The court recessed for the evening at 1803 hours, prior to cross-examination of SA P (R. at 1113), without trial counsel notifying either the court or the defense of the prosecution's discovery of the four collection kits the previous afternoon/evening.

13. During cross-examination of SA P, which began at 0512 hours, Thursday, 23 July 1998 (R. at 1116), civilian defense counsel extensively questioned SA P about the inconsistency between his current testimony and his 30 March 1998 testimony wherein he repeatedly stated that he collected one ring-size box of hair from appellant. (R. at 1120–50.) On redirect examination, the trial counsel asked SA P how many collection kits CID received from NMS. Agent P testified that in addition to the one that he used to collect appellant's hair, CID received four additional collection kits from NMS that had not yet been used. He then examined the sample NMS collection kit admitted by the defense (Def.Ex. A), and declared that it was an incomplete kit because it only had one slightly larger box for collecting pubic hair and that the kit he used had two smaller boxes. He testified that he examined the contents of one of the four unused collection kits CID still had and that it had two, small, "Collection Method B" boxes in it, just like the kit he used to collect appellant's hair, and that he had given these four unused kits to the trial counsel. (R. at 1176–81.) At an immediate Article 39(a), UCMJ, session (R. at 1185–99), the defense moved for a dismissal of the charge based on prosecutorial misconduct, *i.e.*, that the trial counsel failed to disclose this material physical evidence. Trial counsel told the military judge, "We just got the boxes, ma'am, I believe, yesterday," and "[W]e are not required to put every piece of evidence we have in." (R. at 1186.) "So we got this rebuttal evidence yesterday,"

and "we should be permitted to bring this in and we were going to save the actual boxes for rebuttal." (R. at 1188.) The military judge denied the defense motion for a dismissal, deferred ruling on the admissibility of the four unused collection kits, and recessed the court so that defense could examine the boxes.

14. Twenty minutes later, the Article 39(a), UCMJ, session resumed, and the defense moved for a one-week continuance to investigate because this late disclosure "completely changed the complexion of the case." (R. at 1191–92.) Trial counsel opposed the continuance. When the military judge stated that she was inclined to exclude the evidence, trial counsel moved for a continuance, arguing: "[T]hose boxes then become the crutch [sic] of the case. *And [civilian defense counsel] made them so on Sunday at 1300, ma'am.* And, again, we argued about this Monday." (R. at 1194, emphasis added.) Trial counsel told the military judge, "I did not know about [the four collection kits] personally until, I believe, yesterday." (R. at 1195.) He continued, "Your honor, I would never have offered those boxes if [civilian defense counsel] *had not made it the focus— the one box, two box, his entire case.*" (Emphasis added.) Trial counsel argued: *"Those boxes were simply not relevant until Sunday.* And, therefore, we should be permitted to bring them [in] now. We were going to bring them in rebuttal." (R. at 1196, emphasis added.) The military judge deferred her ruling, and the defense resumed cross-examination of SA P. (R. at 1197–99).

15. The four unused, collections kits were discussed during three additional Article 39(a), UCMJ, sessions, that same day (R. at 1274–81, 1300–07, and 1370–1397). In the first of these, trial counsel told the military judge that the unused collection kits were *"an integral part of our rebuttal case,* we believe they make up the *gravaman of our rebuttal case,* based on the evidence the defense is adducing from the prosecution witness, and based on their motion, and based on their opening statement." (R. at 1275, emphasis added.) The trial counsel further stated: "[I]t was not intended to be *direct* evidence which is why we didn't disclose it to

the defense, which is why we didn't know about it before. And, so, ma'am, it is now, because the defense's opening statement, their motion on Sunday, and the representations they've made." (R. at 1276.) *"This evidence,* [civilian defense counsel] *knows, sets his case on its ear,* and we would like this evidence to come before the panel because the government should have an opportunity to put on its case." (R. at 1281, emphasis added.) In the second Article 39(a), UCMJ, session, trial counsel stated that the unused collection kits are *"overwhelmingly relevant and particularly important to our case"* (R. at 1300, emphasis added) and that the *one box/two box idea is a defense "theory that they raised on Sunday"* (R. at 1303, emphasis added). During the third Article 39(a), UCMJ, session, the military judge tried to resolve the issue by getting the parties to stipulate that there were two, small, Collection Method B boxes in the kit that SA Poulsen used to collect appellant's hair. Civilian defense counsel agreed but trial counsel refused, claiming that the unused collection kits were the "smoking gun." (R. at 1379.) Civilian defense counsel then reminded the judge of the government's late disclosure of this evidence and moved for a mistrial because the defense was materially prejudiced in the presentation of their case. On four different occasions during the ensuing discussion, trial counsel unequivocally told the military judge that he did not know that CID had four unused collection kits, each with two "Collection Method B" boxes, until after opening statements. (R. at 1386–92.) Civilian defense counsel challenged trial counsel's assertions and asked for an evidentiary hearing to determine when CID provided the boxes to trial counsel. The military judge denied the motion for a mistrial and the defense request for an evidentiary hearing, but stated that she would reconsider her evidentiary hearing ruling if civilian defense counsel discovered some new evidence by interviewing witnesses. The court then recessed for the day at 1552 hours.

16. At the next session of court on Friday, 24 July 1998, civilian defense counsel renewed his motion for a mistrial based upon the government's failure to disclose the unused collection kits and asked that trial counsel be removed from the case for prosecutorial misconduct for misrepresenting to the court that he received the boxes after opening statements on Wednesday. Trial counsel responded that he had misspoken when he stated that he did not receive the boxes until after opening statement, but that it was irrelevant when he received them because they did not become relevant until after opening statements. The military judge then conducted an evidentiary hearing on prosecutorial misconduct; heard testimony from SA P, SA S, and CPT H; and recessed the court for the weekend.

17. At 0612 hours, on Monday, 27 July 1998, the military judge heard final arguments on the defense motion for a mistrial. After recessing the court for seven hours, the military judge then announced extensive findings of fact and concluded that the trial counsel erred by failing to disclose this material evidence, but decided that a mistrial was not warranted. (R. at 1553–75; App. Ex. LXIV.) Her remedy included making the assistant trial counsel the lead government counsel with the trial counsel's quiet assistance and directing that the

> government will not be allowed to present any evidence regarding the four Protectikit boxes that were located in the CID office at Belvoir and there will be no evidence regarding the fact that the NMS lab sent the CID office at Belvoir 5 Protectikit boxes and that each box contained 2 Collection Method B boxes.

(R. at 1572; App. Ex. LXIV, page 8.) She also referred the matter of trial counsel's "less than candid" comments to the court to the staff judge advocate to investigate whether trial counsel's actions violated Army Reg. 27–26, Legal Services: Rules of Professional Conduct for Lawyers, Rule 3.3 (Candor Toward the Tribunal) (1 May 1992) [hereinafter AR 27–26]. (R. at 1553–75; App. Ex. LXIV.) The military judge failed to give a curative instruction to the members to disregard the testimony of SA P regarding the four unused collection kits, nor did either party to the trial remind her of this omission.

### Discovery of Physical Evidence Under the UCMJ

■ We reject appellate defense counsel's argument that trial counsel's failure to dis-

close the four unused collection kits violated appellant's constitutional due process right to discovery under *Brady* and its progeny. Under this line of cases, reversal for an erroneous nondisclosure is required only when the nondisclosed evidence " 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Strickler v. Greene,* 527 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *see also United States v. Guthrie,* 53 M.J. 103, 105 (2000); *United States v. Williams,* 47 M.J. 621, 625 (Army Ct.Crim.App.1997), *aff'd,* 50 M.J. 436 (1999). Assuming without deciding that the four collection kits in appellant's case were discoverable under *Brady,* appellant is entitled to no relief under *Brady* because the four undisclosed collection kits actually helped the government's case by corroborating SA P's testimony that he collected two small boxes of hair from appellant, thereby strengthening the reliability of the chain of custody of appellant's hair specimen. Accordingly, applying the *Kyles* constitutional standard for relief, we do not find that there was a reasonable probability of a different verdict had this evidence been disclosed to the defense in a timely manner. *See United States v. Romano,* 46 M.J. 269, 273 (1997).

Our failure to find constitutional error does not end our inquiry. Military law has a "hierarchical scheme as to rights, duties, and obligations. The highest source of these is the Constitution, followed by the Uniform Code of Military Justice, [and] the Manual for Courts–Martial." *Romano,* 46 M.J. at 274. The military criminal justice system contains much broader rights of discovery than is available under the Constitution or in most civilian jurisdictions. *United States v. Eshalomi,* 23 M.J. 12, 24 (C.M.A.1986); *United States v. Enloe,* 15 U.S.C.M.A. 256, 258, 35 C.M.R. 228, 230, 1965 WL 4655 (1965). When enacting the Uniform Code of Military Justice, Congress expressly directed that trial counsel and defense counsel "shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." UCMJ art. 46. The President, acting pursuant to this specific authority and his general

authority under Article 36, UCMJ, 10 USC § 836, has also directed that the prosecution and the defense "shall have equal opportunity to obtain witnesses and evidence" and that "[e]ach party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(a) & (f)(1); *see also* R.C.M. 701 "Discovery." "Relevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(f)(1) discussion. "Discovery in military practice is open, broad, liberal, and generous." *Guthrie,* 53 M.J. at 105 (citations omitted). These broad discovery rights granted by Congress and the President are intended to provide "more generous discovery to be available for [the] military accused" than the minimal requirements of pretrial disclosure required by the Constitution. *Eshalomi,* 23 M.J. at 24.

The purpose of such a broad military discovery rule is "to promote full discovery to the maximum extent possible consistent with legitimate needs for nondisclosure (*see, e.g.,* Mil.R.Evid. 301; Section V) and to eliminate 'gamesmanship' from the discovery process." *Manual for Courts–Martial, United States* (2000 ed.), App. 21, R.C.M. 701 Analysis, at A21–32 [hereinafter R.C.M. 701 Analysis]. Rule for Courts–Martial 701 "provides for broader discovery than is required in Federal practice." *Id.* The benefits of a broad military discovery rule are as follows:

> Providing broad discovery at an early stage reduces pretrial motions practice and surprise and delay at trial. It leads to better informed judgment about the merits of the case and encourages early decisions concerning withdrawal of charges, motions, pleas, and composition of court-martial. In short, experience has shown that broad discovery contributes substantially to the truth-finding process and to the efficiency with which it functions. It is essential to the administration of military justice . . . .

*Id.; see also Eshalomi,* 23 M.J. at 24 (citing the same analysis with approval). The intent to eliminate "gamesmanship" and to promote the efficiency and the effectiveness of the military justice system was further demonstrated by the 1991 amendments to R.C.M.

701 that mandated greater disclosure by the defense. Colonel Francis A. Gilligan & Major Thomas O. Mason, *Criminal Law Note: Analysis of Change 5 to the Manual for Courts–Martial*, Army Law., Oct. 1991, at 69–70.

Although our superior court in *Eshalomi*, 23 M.J. at 24, recognized that Article 46, UCMJ, may "impose a heavier burden on the Government to sustain a conviction than is constitutionally required" when defense requested discovery is withheld by the prosecution, it did not squarely address the issue. *See also United States v. Green*, 37 M.J. 88, 90 (C.M.A.1993); *United States v. Hart*, 29 M.J. 407, 409–10 (C.M.A.1990). Erroneous nondisclosure of evidence cases involving prosecutorial misconduct have generally been resolved by a finding of no prejudice,[4] by a determination of harmless error or no reasonable doubt as to the validity of the proceedings,[5] or by a reversal for constitutional error.[6] In at least two cases, the granted issue alleged a violation of Article 46, UCMJ, and constitutional discovery rights, but the cases were resolved without a determination of whether Article 46, UCMJ, created a statutory right of discovery, independent of constitutional requirements. *See Green*, 37 M.J. at 89; *Watson*, 31 M.J. at 50. In fact, in most factual situations, a material violation of an accused's statutory right to disclosure under Article 46, UCMJ, would also undermine the confidence of the verdict under constitutional law. However, appellant's case is unusual, in that it involves a violation of Article 46, UCMJ, without a coexistent violation of constitutional due process. Violations of a soldier's substantial statutory rights under the UCMJ are tested under the material prejudice standard set forth in Article 59(a), UCMJ.[7]

■ Given all of the above, we hold that equal opportunity to obtain evidence under Article 46, UCMJ, as implemented by the President in the Rules for Courts–Martial, is a "substantial right" of a military accused within the meaning of Article 59(a), UCMJ, independent of due process discovery rights provided by the Constitution. Accordingly, violations of a soldier's Article 46, UCMJ, rights that do not amount to constitutional error under *Brady* and its progeny must still be tested under the material prejudice standard of Article 59(a), UCMJ.

Appellant's civilian defense counsel submitted a detailed discovery request in January 1998. The military judge specifically found that this request served as a valid, continuing request for discovery within the meaning of R.C.M. 701, that included these four collection kits. *See* R.C.M. 701(a) & (d). We agree and note that government appellate counsel do not contest this finding. Furthermore, "[w]hen obviously discoverable materials are in the trial counsel's possession, trial counsel should provide them to the defense without a request." R.C.M. 701 Analysis, at A21–33.

■ A trial counsel's duty to disclose physical evidence is stated in R.C.M. 701(a)(2):

(2) *Documents, tangible objects, reports.* After service of charges, upon request of the defense, the Government shall permit the defense to inspect:

(A) Any books, papers, documents, photographs, **tangible objects**, buildings, or places, or copies of portions thereof, which are within the possession, custody, or control of military authorities, and **which are material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution**

---

4. *See, e.g., Guthrie*, 53 M.J. at 105–06.

5. *See, e.g., United States v. Stone*, 40 M.J. 420, 421 (C.M.A.1994); *Green*, 37 M.J. at 90–91 (Judge Wiss, in his concurring opinion, expressly stating his view that "the standard for measuring prejudice from [the] nondisclosure [of evidence] is different under Article 46 from what it is under the Constitution."); *United States v. Watson*, 31 M.J. 49, 55 (C.M.A.1990); *Hart*, 29 M.J. at 410.

6. *See, e.g., Romano*, 46 M.J. at 273; *Eshalomi*, 23 M.J. at 28.

7. *See, e.g., United States v. Rowe*, 11 M.J. 11, 13–14 (C.M.A.1981) (testing for prejudice under Article 59(a), UCMJ, where the military judge violated appellant's statutory right to proper panel instructions under Article 51(c), UCMJ, 10 USC § 851).

case-in-chief at trial, or were obtained from or belong to the accused; and

(B) Any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of military authorities, the existence of which is known or by the exercise of due diligence may become known to the trial counsel, and **which are material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution case-in-chief at trial.**

(Emphasis added.)

In appellant's case, trial counsel argued that he was not required to disclose the four unused collection kits because they were "rebuttal evidence," relying on the opinion of our sister court in *United States v. Trimper*, 26 M.J. 534 (A.F.C.M.R.1988), *aff'd*, 28 M.J. 460 (C.M.A.1989). In *Trimper*, our sister court interpreted R.C.M. 701(a)(2)(A) and (B) "as requiring the trial counsel to disclose to the defense: 1) any *exculpatory* evidence it possesses as mandated by *Brady v. Maryland, supra*; and 2) the evidence it intends to offer in its *case-in-chief*." *Trimper*, 26 M.J. at 536 (emphasis in original). The *Trimper* court held "that rebuttal evidence is not discoverable under R.C.M. 701 unless it is exculpatory in nature or material to punishment." *Trimper*, 26 M.J. at 537. We respectfully disagree with our sister court's narrow interpretation that the term "material to the preparation of the defense" in R.C.M. 701(a)(2)(A) and (B) is limited to exculpatory evidence under the *Brady* line of cases and hold that our sister court's decision in *Trimper* should no longer be followed in Army courts-martial. There is no language in R.C.M. 701, or in its analysis, indicating any intent by the President to limit disclosure under Article 46, UCMJ, to constitutionally required exculpatory matters. As noted above, R.C.M. 701 is specifically intended to provide "for broader discovery than is required in Federal practice" (R.C.M. 701 Analysis, at A21–32), and unquestionably is intended to implement an independent statutory right to discovery under Article 46, UCMJ. The parallel Federal Rule of Criminal Procedure 16(a)(1)(C), is not based on a separate, statutory right to discovery.

▪ Trial counsel in appellant's case violated R.C.M. 701(a)(2)(A) in two different ways. First, this record unquestionably establishes that this evidence was "material to the preparation of the defense" under R.C.M. 701(a)(2)(A). Under this standard, it is irrelevant whether the government intends to offer the evidence in its case-in-chief, in rebuttal, or not at all. It still must be disclosed if it is "material to the preparation of the defense." Furthermore, when a trial counsel fails to disclose information pursuant to a specific request or when prosecutorial misconduct is present, the evidence is considered material unless the government can show that failure to disclose was harmless beyond a reasonable doubt. *See Hart*, 29 M.J. at 410; *Stone*, 40 M.J. at 423 & n. 4.

▪ In appellant's case, trial counsel knew by at least Sunday, 19 July 1998, that this evidence was material to the defense's case. In several places in the record, trial counsel acknowledged that he knew that the one-box/two-box theory was an integral part of the defense case by Sunday, 19 July 1998, two days before he personally became aware of the four unused collection kits. We find as fact that on Tuesday, 21 July 1998, when trial counsel first learned about the four unused collection kits, he knew that this evidence gutted the defense's previously credible theory that the NMS collection kit used to seize appellant's hair contained only one box, but that mysteriously two boxes of hair arrived at the laboratory, thereby undermining any conclusion that the pubic hair test analysis provided any credible proof of drug use by appellant. UCMJ art. 66(c).

We further find that trial counsel intentionally withheld disclosure until after opening statement and cross-examination of SA P to gain the maximum tactical advantage from this evidence and that trial counsel believed that when he subsequently introduced these four collection kits into evidence they would be the "smoking gun" which would stand the defense's case "on its ear." UCMJ art. 66(c). As Chief Judge Souter noted in another nondisclosure case, these types of "self-inflicted wounds" by the government impede the

truth-finding process and constitute gamesmanship which R.C.M. 701 was intended to discourage. *United States v. Lawrence*, 19 M.J. 609, 614 (A.C.M.R.1984).

■ Trial counsel also violated the provision in R.C.M. 701(a)(2)(A) that requires the disclosure of evidence "intended for *use* by the trial counsel as evidence in the prosecution case-in-chief at trial" (emphasis added). After carefully considering the entire record, we find as fact that the trial counsel decided, prior to opening statement, to have SA P discuss this evidence on redirect examination, but planned to withhold offering the four collection kits into evidence until after the defense case-in-chief. UCMJ art. 66(c). Such a tactic clearly violates R.C.M. 701(a)(2)(A), which prohibits any intended use of, not just the offering into evidence of, undisclosed tangible objects during the government's case-in-chief. By introducing evidence of the four undisclosed collection kits during redirect examination of a government witness, as part of the government's case-in-chief, trial counsel violated this rule. Trial counsel's intent to wait until rebuttal (after presentation of the defense case-in-chief) to move the admission of the actual kits into evidence did not prevent a rule violation.

■ Government appellate counsel do not contest that trial counsel violated R.C.M. 701(a)(2)(A) by not disclosing this information but argue that appellant suffered no material prejudice from the nondisclosure. We disagree.

A soldier has the right to a fair trial conducted in accordance with his statutory rights under the Uniform Code of Military Justice. *Rowe*, 11 M.J. at 13. The military judge ruled that the government would not be allowed to present "any evidence" concerning the four undisclosed collection kits, but she failed to instruct the members to disregard the testimony about these kits by SA P on redirect examination. This omission, and the failure by both parties to remind her of it, resulted from the piecemeal manner in which the facts underlying the mistrial motion were disclosed and litigated. Five days and almost 400 pages of trial record elapsed between SA P's disclosure of this evidence to the members and the military

judge's ruling that the government would not be allowed to present any such evidence.

The military judge in this case soundly exercised her considerable discretion and fashioned a combination of remedies that, had she enforced them, would have constituted a reasonable alternative to the drastic remedy of a mistrial. However, her failure to issue a curative instruction to the members, while understandable under the circumstances, nevertheless negated the validity of the remedy that she herself fashioned. Under these facts, the military judge had a sua sponte duty to enforce her decree that the government would not be allowed to present any evidence regarding the four undisclosed collection kits by issuing an appropriate curative instruction to the members that they would disregard the testimony they heard on this issue five days ago.

The members' consideration of this prohibited evidence undoubtedly undermined the credibility of defense's opening statement and hampered the defense's ability to effectively confront and cross-examine SA P. It may also have undermined, in the eyes of the members, the credibility of civilian defense counsel during his examination of appellant in the defense's case-in-chief and during closing arguments. Appellant's defense team had a two-prong strategy to discredit both CID's registered source and the reliability of the scientific analysis of appellant's hair. Failure to execute either prong of this defense would permit the government to prove its case beyond a reasonable doubt. Prior to disclosure of the four NMS kits with two "Collection Method B" boxes, the defense's case supporting the second prong of its defense was credible, considering the prior testimony that the NMS kits contained only a single "Collection Method B" box, that the defense introduced a sample NMS kit that contained only one "Collection Method B" box, and the prior testimony that only one box of appellant's hair was collected.

Accordingly, we hold that, under these facts, appellant's substantial rights to a fair trial and to have equal access to the evidence against him were materially prejudiced by the government's nondisclosure of material

physical evidence and the military judge's failure to give a curative instruction to the members to disregard the testimony that the government presented regarding the four unused collection kits. UCMJ art. 46 & 59(a).

### Professional Considerations

We agree with the military judge when she stated the following in her findings of fact:

> [T]here has been a lot of animosity between [trial counsel] and the Defense team as a whole. On several occasions, the Court had to remind counsel for each side to stop goading or taking jabs at the opposing party. However, this does not excuse the government's failure to disclose evidence that should have been disclosed or [trial counsel's] lack of candor to the Court.

(App.Ex. LVIV, para. 17.)

Professional advocacy may be aggressive, but it does not include making personal attacks on one's adversary. As a result of the personal animosity between the principal litigators, trial counsel lost his focus and forgot that "[a]s a representative of a sovereign, a prosecutor's duty is not to win the case, but to ensure that justice is done." *Williams,* 47 M.J. at 625 (citations omitted). "[T]he purpose of a criminal trial is truthfinding within constitutional, codal, Manual, and ethical rules." *Romano,* 46 M.J. at 274 (citation omitted). Counsel must always be mindful that the Rules of Professional Conduct applicable to Army courts-martial provide that a lawyer shall not "unlawfully obstruct another party's access to evidence ... **having poten-**tial evidentiary value.**"** AR 27–26, Rule 3.4 (Fairness to Opposing Party and Counsel) (emphasis added); *see also United States v. Province,* 45 M.J. 359, 362–63 (1996). The comment to Rule 3.4 explains:

> The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.

Considering the purposes behind the broad military discovery rule and the intent of the rules of professional responsibility, the successful trial counsel will engage in full and open discovery at all times and will scrupulously avoid gamesmanship and trial by ambush, which have no place in Army courts-martial.

### Decision

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge TOOMEY and Judge CANNER concur.